Joan Gail **LEVERETT**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 42959.

Court of Criminal Appeals of Texas.

June 24, 1970.

Price, Fisher, Hill & Patton, by Odis Hill, Longview, for appellant.

Robert M. Allen, County Atty., and J. R. Patterson, Jr., Asst. County Atty., Henderson, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

BELCHER, Judge.

The conviction is for assault to murder with malice; the punishment, four years.

The evidence reveals that the appellant, Joan Gail Leverett, and the assaulted party, Howard Leverett, had previously been married, and during their marriage, they had one child, a boy, twelve years of age at the time of the alleged offense herein on November 14, 1968. Upon their divorce June 17, 1957, the appellant was awarded custody of the boy with the provision that she not remove him from Rusk County without permission of the court. The appellant and her son lived with her parents until February 1967, when she moved away and was living in Bossier City, Louisiana, on November 14, 1968. The boy continued to live with his grandparents. About 7 p. m., November 12, 1968, the appellant arrived at the Miller home to visit her son. In a brief time when an argument arose between appellant and her parents, she took the boy and went to the place where she was residing in Bossier City. On November 13, while she was bathing, the boy went nearby to get a Coca Cola. When the boy did not return, she began to investigate, notified the officers and telephoned many persons and then concluded that her ex-husband had taken the boy. The father, Howard Leverett, went to Bossier City for the purpose of getting the boy from appellant. He took the boy while he had gone for the Coca Cola but never notified the appellant. When the appellant arrived at Howard's home about 2:30 a. m., November 14, she began cursing, attempted to enter the house, and shot six times with a .22 caliber pistol putting five holes around the door knob and one in the door facing while Howard was inside the house. After emptying the pistol she cut her foot in kicking out some glass panes in the door, and became scared when her foot began bleeding profusely and went to her sister-in-law's home for help. She was arrested at the hospital and placed in jail. The appellant testified that she did not shoot at Howard, that she did not intend to shoot him or cause him any bodily harm, but that she was only trying to shoot the lock off the door to gain entrance to the house and get her boy.

The appellant contends that the trial court erred in admitting into evidence two letters written by her: One to her mother Mrs. S. C. Miller, on July 11, 1968, and the other to her brother, James Miller, on

July 16, 1968, which was four months before she went to Howard's home on November 14, 1968.

The appellant testified that her parents sent her to dancing school when she was five years of age, that she was a ballerina at age fifteen, that she was a qualified tap, ballet and modern dance instructor, that she was a singer and a professional dancer.

On cross-examination the appellant was first asked and denied that she was an exotic dancer or a "stripper" at any time. At this point the appellant objected to any further questioning or testimony about her being a "stripper" on the ground that it did not bear upon any issue in this case and was an attempt to impeach her on an immaterial and collateral matter which was inflammatory and prejudicial. Other than the question asked and her denial that she was a "stripper," the state in its brief points to the contradictions between her testimony and the letters that: She had a civil service job in Georgia, that Howard was the only man she ever loved and the only husband she ever had, and she intended to take the boy to Louisiana to live September 1, where she had a job waiting.

Prior to the state's introduction of two letters written by the appellant the following occurred:

"State's Attorney: Your Honor, my whole line of questioning is to the truth —truthfulness and veracity of this witness. I intend to show that her complete testimony is dotted with lies, and the only way I can do this is to show where she has lied throughout her entire testimony. I am not trying to run her down or anything of that nature. All I am trying to do is show it is not the truth.

"Appellant's Attorney: They have a right to test her veracity but not to impeach her upon collateral matters. It has nothing whatsoever to do with this lawsuit.

"The Court: What did you have; you did have a letter or something.

"State's Attorney: This letter is her own letter in her own handwriting.

*   *   *

"Appellant's Attorney: Your Honor, we renew each of the objections we made yesterday to this effect, any cross examination on the point which he is leading into or which he mentioned immediately before attempting to introduce or read from this letter is irrelevant and immaterial; it doesn't bear on any issue in this lawsuit; it is attempted impeachment on a collateral matter.

"The Court: All right. Overruled."

The following letter written by the appellant and received by her mother, Mrs. S. C. Miller, Route 1, Box 252, Overton, Texas 75684, was admitted in evidence and read to the jury by the state's attorney:

"July 11, 1968

"Mother,

"I cannot imagine *who* you think I owe room rent to. I *payed* my rent in Longview before I moved and the only other place I lived was the motel in Bossier City. They have also been paid. Who says I owe room rent? You must be crazy. But I will ask Billy if that's Pearl calling. Maybe a check bounced.

"Your insults don't make a damn to me and I will f—— whomever I please, teenage or whatever. I have *never* embarrassed Steve and *cannot* be proved an unfit mother. I know many *strippers* who have beaten that charge and I intend to take my child to Louisiana to live Sept. 1. Furthermore, I *have* a job waiting over there and you can bet your sweet ass I can support my son and legally take him out of Texas. 'Old fat boy' is just tickled to death to defend me and suck Howard's blood for *back* child support, child support, and Roland's social security. I don't *need* your royal ass once I get out and you don't need to worry about *ever* seeing me or Steve again because I am not mentally incompetent and

I can *prove* it. I *hope* you're so 'hurt' about the 'life I've chosen' that you bleed to death. I was damn well hurt the way you acted after my divorce.

"I do not expect to be here after next week, but for your information the $5 went for *food* & writing paper. That should gladden your black, ungodly heart. I have not had a dime since a week and a half ago and if it pains your ass for me to eat and write, keep your god-damned $5 and the cigarettes too if my old sot, infidel, adulterer father doesn't want to spare me a carton. I didn't expect much if you want to know something.

\* \* \*

(Two paragraphs of this letter consisting of thirty-five lines of the same tenor and purport are omitted.)

"You've managed to *drive* me out of that family & Jim is like a perfect reflection of *you* and Uncle Homer. Big deacon goes to the whore house when Betty's not with him. He told me so himself. And slaps her face when he gets mad and *beats* those kids till they're scared to death of him. But he's like *you,* he's perfect.

"Well you 3 perfect people can *have* each other. You damn right I don't fit. I don't *think* I'm perfect. And my son belongs to *me* not you ass holes. I've been a fool not to move out and take him before now, but he's leaving Sept. 1 and enrolling in school in Shreveport and you won't be *seeing* us again.

"I don't have anything else to say. I *tried* to love *you,* but you never tried. So I'm through.

"P. S. Thanks again for not naming me Hanna or Esmiralda

Joan ————

I like

Joan Gail"

The letter written by the appellant to and received by her brother, James Miller, was introduced by the state and admitted into evidence over the same objections that appellant made to the admission of the letter written to her mother. This letter is of the same purport and substance as that in appellant's letter to her mother. It is not deemed necessary to set the letter out.

The court charged the jury upon assault to murder with and without malice and aggravated assault.

In the charge the court limited the jury's consideration of the two letters to appellant's credibility as a witness and the weight to be given her testimony.

No affirmative defensive testimony was submitted to the jury in the charge on behalf of the appellant.

The appellant filed an application for probation, and the court submitted the issues of punishment and probation to the jury, and they declined to recommend that the sentence be probated.

The matters related in the two letters which were written while appellant was confined in a mental ward of a state institution in Rusk four months before the alleged offense occurred were immaterial, collateral to and wholly disassociated with this offense. While testifying, the appellant admitted going to the house and shooting into the door, but she denied that she had any intent to harm or kill Howard Leverett. The letters were of such a nature that they would be reasonably calculated to prejudice appellant's rights before the jury in considering her credibility as a witness, the punishment to be assessed, and her application for probation, and they deprived her of a fair and impartial trial. 1 Branch 2d 198, Sec. 187; Warrick v. State, 119 Tex.Cr.R. 637, 45 S.W.2d 976; Ramirez v. State, 159 Tex.Cr.R. 410, 264 S.W.2d 99; Mauldin v. State, 165 Tex. Cr.R. 405, 308 S.W.2d 36; Chatterfield v. State, Tex.Cr.App., 436 S.W.2d 146.

It is concluded that the letters were of such a harmful nature and prejudicial to

appellant's rights that their discrediting effect could not be cured by a limiting instruction in the court's charge.

For the reasons pointed out, the judgment is reversed and the cause is remanded.