**Enorris BRYANT, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. A14–88–1077–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 20, 1989.
Discretionary Review Refused
Nov. 22, 1989.

Carol J. Carrier, Houston, for appellant.

Carol M. Cameron, Houston, for appellee.

Before J. CURTISS BROWN, and JUNELL and DRAUGHN, JJ.

OPINION

JUNELL, Justice.

A jury convicted appellant of possession of firearm by a felon. Punishment was assessed by the jury, enhanced by two prior felony convictions, at confinement in the Texas Department of Corrections for thirty-five years. Appellant brings three points of trial court error: (1) improper admission of evidence of an extraneous offense; (2) improper denial of a special jury instruction; and, (3) improper cross-exami-

nation on an unrelated and prejudicial writing. We affirm.

Houston police officers arrested appellant one morning after observing him usher a female dressed only in a bathrobe down a city street, a procedure he accomplished by holding her hair in one of his hands and pointing a loaded small-caliber handgun to the side of her body with the other. The female, Lymural Byrd, testified under subpoena that appellant had locked her in his rooms at an "animal house", a place where people convened to use cocaine. Appellant had hit Ms. Byrd in the abdomen and face with his fists and confined her after accusing her of stealing the pipes and other drug paraphernalia he used, sold and rented. Ms. Byrd said she escaped from the rooms through a window after another female inhabitant unlocked the bedroom door; and that she took a cab to the home of her mother, where she was met in the driveway by appellant holding a gun. She testified that appellant had forced her to walk several blocks back toward the "animal house" when police intervened.

Appellant testified that the so-called "animal house" is really a rooming house like "Sacred Hope" where "dope fiends" are furnished lodging for rent money if they have it and that the purpose of the house is to lead people away from cocaine and to the use of less harmful "Crack" instead. Appellant testified that he had observed Ms. Byrd, under the influence of cocaine, leave the house wearing his bathrobe. He knew there was a gun in the pocket of his bathrobe. He chased after Ms. Byrd to retrieve the gun, finally catching up with her at her mother's house. According to appellant, he took the gun away from Ms. Byrd and, in the process of escorting her back to "animal house", was only one house away when he was apprehended by police while in possession of the handgun. Appellant testified that his actions were intended to prevent Ms. Byrd from killing his niece, against whom he claimed she had made threats.

At trial the State repeatedly tried without success to get into evidence certain letters sent by appellant to Ms. Byrd while he was in jail awaiting trial. When appellant testified on cross-examination that he had never threatened violence upon Ms. Byrd, the following excerpt from one of the letters was read by the State over objections later described herein:

> My beloved, my most beloved little silly wife, how are you making it? Okay I do hope. As for me I am sitting here thinking about getting out of here and getting me a shotgun and blowing your damn brains out you stupid bitch. If ever there was ever a slut that needed killing as you, woman, and I am just a nigger that will do it and, bitch, you know it.

Appellant previously had examined the letter and admitted having written and sent it. He insisted to no avail that the balance of the letter be read to the jury to show its exculpating content.

Testimony established that appellant was on parole from a conviction of murder without malice and the parole officer testified that appellant had been warned several times not to be in possession of any firearms.

The defense was denied this special jury instruction dictated into the record:

> That is, that you're instructed that the conduct of the defendant in possessing away from the premises where he lived a firearm is justified if the actor reasonably believe [sic] that the conduct was immediately necessary to avoid imminent harm, ...

■ Points of error number one and number three relate to the introduction of the above-quoted excerpt from appellant's letter to Ms. Byrd. Appellant characterizes the admission of the statement as *evidence of an extraneous offense* in point number one, and, as *cross-examination* on a *prior, unrelated and prejudicial writing* in point number three. After removal of the jury, the following denied objection was made by the defense in advance of the introduction of the statement from appellant's letter to Ms. Byrd:

> Your honor, my objection is at this point the State is going into matters that are totally immaterial and irrelevant to the charge in this particular case with this

possession of firearm by a felon. We're not trying this case for terrorist threats or aggravated assault or anything like that. There's no information at this point in time that the threats that were supposedly made subsequent thereof were some—subsequent to this action or even before this action could be considered relevant to whether or not he carried a gun away from the premises. I think that if the court allows counsel to go into this, then is going into damaging evidence that is irrelevant and immaterial to the charges that this man is charged with and that will have the affect [sic] of perhaps convicting him on evidence of other collateral matters that really have nothing to do with this particular case. Whether or not there are some threats, whether or not they are in the letter have nothing to do with the charges against him, which is whether or not he carried a weapon away from his premises.

The court granted a "running" objection as to the letter, and later, after the letter was identified by appellant and before the excerpt was read into the record, the defense offered the following objection which was overruled:

I object to anything written coming from something that is not in evidence, judge.

Even if either one of the above objections can support the points of error as presented here in numbers one and three, the letter excerpt was proper impeachment under Rules 607 and 612(a), TEX.R.CRIM.EVID. The prior inconsistent statement read from the statement was distinctly relevant to the cross examination. Appellant had just previously responded to the contrary when questioned whether he had ever threatened Ms. Byrd with violence. Appellant gave other testimony that he loved Ms. Byrd and that he was trying to get her to give up drugs. The jury was being furnished ample and appropriate information upon which to make a determination of appellant's credibility. The subject of the statement was not a collateral matter. The letter itself was not introduced as evidence. No objection was made to the use of the statement for impeachment purposes and no

objection was voiced as to any lack of proper predicate for such use. The State's procedure conformed with the standards of *McGary v. State,* 750 S.W.2d 782 (Tex. Crim.App.1988).

Appellant offers the facts of *Leverett v. State,* 455 S.W.2d 312 (Tex.Crim.App.1970), to support an argument that the content of the letter was completely unrelated and prejudicial. In *Leverett,* the entirety of the letters in question had been introduced into evidence. The letters, written to appellant's mother and brother while appellant was in a mental institution months before the offense occurred, were found on appeal to be immaterial, collateral, and wholly disassociated with the offense charged, and the trial court's limiting instruction was held to be an inadequate cure. We do not find those circumstances here and reject the argument.

The State suggests the threatening statements of appellant in his letter give evidence of his guilt, citing *Rodriguez v. State,* 577 S.W.2d 491, 493 (Tex.Crim.App. 1979), under a theory that threats against Ms. Byrd were attempts to suppress evidence by discouraging her appearance or diluting or chilling her testimony. The record does not show sufficient development of this argument to justify giving it consideration. Nonetheless, the excerpt from the letter is found to be admissible as impeachment and points of error number one and number three are overruled.

■ In point of error number two, appellant claims the court below should have granted the special jury instruction quoted above which appears to be a paraphrase of TEX.PENAL CODE ANN. § 9.22 "Necessity":

Conduct is justified if:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law prescribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

Not only was the requested instruction an inadequate statement of the law, no fact issue concerning the defense of necessity was ever raised at trial. There was neither evidence of any immediate necessity nor of any imminent harm to be avoided.. Therefore there was no basis upon which any of the balancing prescribed by subdivision (2) could be made. What the actor seeks to prevent must first be a "harm", and the harm the actor perceives must "clearly outweigh" the harm which will result from his acting in violation of another law. *Bobo v. State*, 757 S.W.2d 58, 63 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). Appellant's point of error number two is overruled.

The judgment of conviction is affirmed.