George William HUFFMAN, Petitioner-Appellant,

v.

Dr. George J. BETO, Director, Texas Department of Corrections, Respondent-Appellee.

No. 28898.

United States Court of Appeals, Fifth Circuit.

Nov. 16, 1970.

Rehearing Denied Dec. 4, 1970.

Certiorari Denied March 1, 1971.

See 91 S.Ct. 964.

Lawrence Stuart, Jr., Dallas, Tex. (court-appointed), for petitioner-appellant.

George W. Huffman, (pro se).

Crawford C. Martin, Atty. Gen. of Tex., Nola White, First Asst. Atty. Gen., Alfred Walker, Executive Asst. Atty. Gen., Robert C. Flowers, Howard M. Fender, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before COLEMAN, AINSWORTH, and GODBOLD, Circuit Judges.

COLEMAN, Circuit Judge:

On April 30, 1959, the Supreme Court decided Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217.

*Napue* had been convicted of murder. The principal witness for the state, a previously convicted accomplice, testified in response to a question by the Assistant State's Attorney that he had received no promise of consideration in return for his testimony. In fact, the Assistant State's Attorney had made such a promise, but did nothing to correct the false testimony.

It was held that the failure of the prosecutor to correct the testimony of the witness *which he knew to be false* (emphasis added) denied *Napue* due process of law. It was further held that the prosecution may not knowingly use false testimony even if it goes only to the credibility of the witness.

The court further stated, "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears", 360 U. S. at 269, 79 S.Ct. at 1177.

Invoking *Napue*, petitioner-appellant George William Huffman seeks by habeas corpus to set aside the verdict of a jury and the judgment of a Texas State Court, convicting him in 1959 of robbery by assault upon one Robert Doyle Cline.

It was not until April, 1966, that Huffman petitioned the United States District Court, Southern District of Texas, for the writ, alleging that the state had knowingly used perjured testimony to obtain his conviction.

This is the third time this case has been before this Court on appeal, see 382 F.2d 777 (1967) and 414 F.2d 1094 (1969).

There is no real dispute about the underlying facts. At the trial in the state court, Cline testified that on the day of the robbery he had cashed his pay check at the San Juan State Bank for $212.26, receiving a $100 bill, a $50 cashier's check, and $62.26 in small bills. The indictment charged Huffman with taking a $100 bill along with a Scripto pencil and a pocket knife. Cline testified that Huffman and confederates took a $100 bill and a $50 cashier's check. During the course of the trial a private individual, at Huffman's request, called the bank and was told that on December 8, 1958 Cline had actually received a $150 cashier's check. In other words, Cline had not obtained from the bank the $100 bill nor did he have a $50 cashier's check which he testified he had obtained there and which he further testified had been taken from him in the alleged robbery. After the evidence had been closed and during the course of final arguments to the jury the report was communicated to Huffman and his privately retained counsel. Defense counsel then informed the prosecuting attorney. The prosecutor stated that such a development was hard to believe, or words to that effect, but that he would look into it and do something about it if there was "anything to it". After the verdict of guilty, the discrepancy in Cline's testimony was brought to the attention of the state trial court in a motion for a new trial. The motion was denied.

In the last appearance of the case in this Court, it was remanded to the district court in the following language, 414 F.2d 1096:

"As to the other contention, the alleged use of perjured testimony, the state contends that the findings of fact and conclusions of law of the district court should not be disturbed unless they are clearly erroneous. The problem with this argument is that the district court made no subsidiary findings of fact regarding the use of perjured testimony. The court simply found that the facts failed to substantiate the contention that the prosecutor knowingly offered perjured testimony. There were no findings as to the underlying facts, accuracy or credibility with regard to this question. At both hearings below, Huffman testified that the prosecutor was informed during the state's closing argument that Cline's testimony as to the source of the allegedly stolen $100 bill was false. Huffman also testified that the prosecutor, when informed of this fact, refused to stop the trial but promised to do something about it if there was anything to what he had been told. While the discrepancy in Cline's testimony only goes to the credibility of the complaining witness, that would not prevent it from being a fatal defect in the trial if it 'may have had an effect on the outcome of the trial'. Napue v. Illinois, 1959, 360 U.S. 264, 269, 272, 79 S.Ct. 1173, 1179, 3 L.Ed.2d 1217. Cf. Chapman v. California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, on harmless error.

"The judgment must be vacated so that the district court may enter full findings, including credibility choices, as to this issue. These may be made on the present record, or on a supplemented record, all in the discretion of the district court.[2] "

In response to this remand, the district judge re-examined the transcript of prior hearings, determined that no further hearing was necessary, and found the subsidiary facts to have been as hereinabove indicated. The district court further found:

"The testimony of Robert Cline at the petitioner's trial was introduced by the respondent at the hearing held in this court. It indicates that Cline believed without doubt that he had a $100 bill in his possession, and this Court credits his testimony to that effect as true. The Court believes that even if Cline did not receive a $100 bill from the bank upon cashing the $212.26 check, that is not conclusive proof that he did not in fact have a $100 bill in his possession. The bank report proves only that the cashier's check was for $150 rather than $50. The source of the bill is immaterial. If Cline was mistaken as to its source, that inconsistency does not rise to perjury, and the Court so holds.

"This is not the type of defect which could have had an effect on the outcome of the trial. The petitioner and his counsel knew at the time that since a conviction could result from the theft of the pencil alone, there would be no purpose to be served in raising the inconsistency. Perhaps that is the reason the petitioner and his attorney remain silent, for it was their right to challenge the testimony at the time".

The pencil in question was found on Huffman when he was arrested for the robbery.

The District Court again denied relief. Hence this third appeal.

The record reveals other interesting facts.

One Odis Odell Pennington was indicted and in a separate trial was convicted of the same robbery. See Pennington v. State, 345 S.W.2d 527 (Tex.Cr.App., 1961), 353 S.W.2d 451 (Tex.Cr.App., 1962), and 364 S.W.2d 376 (Tex.Cr. App., 1962).

In ultimately affirming *Pennington's* conviction on the merits, 364 S.W.2d 376, 378, the Texas Court of Criminal

Appeals gave the following version of the alleged robbery.

"The present appeal is from San Patricio County, trial being in the 36th Judicial District Court of that county upon a change of venue.

"The state's testimony shows that on the day in question the prosecuting witness, Robert Doyle Cline, after cashing his pay check at a bank in San Juan, drove to Edinburg in his 1949 Dodge automobile. Later, he left Edinburg and as he drove out about as far as the city limits he picked up the appellant, Odis Odell Pennington, and two companions, George Huffman and Lester Atkins. The prosecuting witness then proceeded to drive north on Highway 281, making three stops for beer. After the last stop, as he was driving on the highway near Clarkwood in Nueces County and had turned off on a paved road, appellant and his companion, Huffman, who were seated in the rear of the automobile, grabbed the prosecuting witness by the hair, pulled his head back, and then hit him in the face with two beer bottles. They then shoved the prosecuting witness out from under the steering wheel and Atkins started driving the automobile. Appellant then proceeded to get in the front seat and strike the injured party. While Atkins was driving, the prosecuting witness was kicked in the kidney, and after Atkins stopped the automobile the injured party fell out of the vehicle and was left lying on the ground beside his billfold, which contained no money. Appellant was seen by the injured party in his automobile as it was being driven away. The prosecuting witness testified that in the assault a hundred dollar bill was taken from his pocketbook, a Case pocket knife from his pants pocket, and a Scripto pencil from his shirt pocket, and that such property was taken by force and without his consent.

"The state's proof further shows that appellant and his two companions, Huffman and Atkins, were arrested several days later in Corpus Christi by Officer Fontaine, upon information received by the officer that the robbery had been committed and a warrant had been issued for their arrest. At the time of the arrest, appellant had in his possession the Case pocket knife which the injured party testified had been taken from his person, and appellant's companion, Huffman, had in his possession the Scripto pencil which had been taken from the injured party in the robbery. In the investigation, the injured party's automobile was found abandoned on a road five miles west of Clarkwood, minus the four tires and wheels."

Huffman had the same privately retained counsel as Pennington. Pennington was tried first. The discrepancy as to the origin of the $100 bill did not come up at that first trial. It is obvious that both the prosecutor and defense counsel went into Huffman's trial with a full command of the purported facts, as developed in the prior Pennington trial. It is also obvious that it never occurred to either of them to make inquiry at the San Juan State Bank as to whether Cline had really obtained the $100 bill from that source. It is common knowledge, of course, that banks do not keep records as to the recipients of $100 bills. They do keep records of cashier's checks issued.

It is clear from this record, as the District Judge held, that the state did not at the trial knowingly use false testimony. The evidence was closed when the unverified report from a third party was received. Quite clearly, criminal trials cannot be halted to run down the authenticity of every unverified report that may come in during the course of the trial, especially in the course of closing arguments.

That, however, is not a complete answer to the problem presently confronting this Court because at the time the motion for a new trial was heard and

denied an officer of the bank had verified the report as to the cashier's check.

In *Napue,* the Supreme Court held, as already stated, that "[t]he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears".

On the record then before it, we think the prior panel correctly put the question in its remand, 414 F.2d 1096: Did Cline's testimony as to the origin of the $100 bill have an effect on the outcome of the trial? The District Judge, as already set forth, found in the negative.

Cline was the only eye witness for the prosecution. It could therefore quite conceivably have been that if the jury had known that Cline was either mistaken or wilfully swearing falsely as to the origin of the $100 bill it might also have considered that he was mistaken or swearing falsely as to being robbed of a bill of that denomination.

That, however, was not the sole evidentiary basis for the charge. A Scripto pencil is not an object of much pecuniary value but it is an identifiable object, which was found on the person of Huffman when he was arrested along with his confederates in Corpus Christi.

It is equally as reasonable to assume that the jury would have considered that while Cline was honestly mistaken about the source of the bill there could be no mistake about the pencil found on the defendant. That was the clincher in the evidence.

It was the function and duty of the District Judge, not this Court, to find the facts, Turner v. Ward, 10 Cir., 1963, 321 F.2d 918 [a false testimony habeas corpus case]. The District Judge found, as already stated that "Cline believed without doubt that he had a $100 bill in his possession, and this Court credits his testimony to that effect as true". That necessarily means that as to the origin of the bill Cline gave testimony not falsely but only mistakenly.

Reverting, however, to the command of the prior remand, which is the law of this case, we are in no position to say that the District Court was in error when he found that the defect in Cline's testimony *could not have had an effect* on the outcome of the trial.

The prior panel of this Court was careful to direct the attention of the trial court on remand to the harmless error rule of Chapman v. California, *supra.*

We are also aware of the rule announced by this Court en banc in Luna v. Beto, 1968, 395 F.2d 35, 40:

"But for an otherwise valid state conviction to be upset years later on federal habeas corpus, surely something more than an evidentiary *mistake* must be shown. If *mistake* is enough, then never, simply never, will the process of repeated, prolonged, postconviction review cease. For in every trial, or at least nearly every trial, there will be, there are bound to be, some mistakes.

"What elevates the 'mistake' to a constitutional plane is at least twofold. First, the mistake must be material in the sense of a crucial, critical, highly significant factor. Second, it must have some State complicity in it."

We add a postscript by noting that Cline, the prosecuting witness, is now dead. It is sad to observe that prior to his conviction in the instant case Huffman had pleaded guilty to two burglaries, for which he had served terms in prison. He is presently under a final prison sentence, not yet begun, for another robbery by assault, committed six years after he was tried for the offense now under consideration.

Affirmed.