George W. HUFFMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 31436.

Court of Criminal Appeals of Texas.

Feb. 23, 1972.

Rehearing Denied May 9, 1972.

**63**

Stonewall Van Wie, III, Corpus Christi, for appellant.

Jim D. Vollers, State's Atty., and Robert Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an out-of-time appeal granted pursuant to Huffman v. Beto, 382 F.2d 777 (5th Cir. 1967) and Huffman v. Beto, 414 F.2d 1094 (5th Cir. 1969). Appellant was convicted of robbery by assault [1] in

1. The penalty assessed was 25 years.

the 105th District Court of Nueces County, on June 24, 1959. As a result of his conviction, his parole on a 1956 conviction for another offense was revoked, and he was sent to the penitentiary. On November 11, 1959, he completed his service of the 1956 sentence, and was, through oversight, released from the penitentiary. At this time, his appeal from the robbery conviction was pending before this Court. On February 3, 1960, this Court granted the State's Motion to Dismiss the appeal, on the ground that appellant's absence from custody was, in law, equivalent to an escape. Huffman v. State, 331 S.W.2d 325 (Tex.Cr.App. 1960). The facts surrounding appellant's erroneous discharge were developed in the federal Habeas Corpus Proceeding cited above. Subsequent to the granting of the out-of-time appeal, but prior to submission of the appeal to the court, appellant applied for Writ of Habeas Corpus in the 105th District Court of Nueces County, and on July 20, 1971, after a hearing, the court entered findings of fact and conclusions of law, and granted the writ. The findings of fact deal with matters not contained in the appellate record. Before discussing the evidence elicited at the hearing, we shall first examine the merits of the appeal.

At trial, Robert Doyle Cline, the complaining witness, testified that on December 8, 1958, he received a check in the amount of $212.26 from his employer, as compensation for his services as an oil field "rough neck." He stated that on that date he negotiated the check at the San Juan State Bank, in San Juan, Texas. He testified that he received in exchange for the check, a one-hundred dollar bill, a fifty-dollar cashier's check, and the remainder in small bills. He said that after cashing the check, he drove to Edinburg, Texas, and after a short delay, left Edinburg in his automobile, and headed for Corpus Christi. Shortly after leaving Edinburg, Cline saw three hitch-hikers by the road. He stopped and picked up the three, one of whom was the appellant, the other two being Lester Adkins and Otis Pennington. A few miles

farther down the road, Cline stopped and picked up a fourth hitch-hiker, whose name he did not learn. The group then proceeded toward Corpus Christi, stopping four times for beer along the way, the last two stops being in Kingsville. Cline testified that he stopped in Kingsville and called his wife, who was working in Kingsville, telling her that he was going to Corpus Christi. Cline testified that he was going to Corpus Christi because the three hitch-hikers had offered at Kingsville to pay him if he would take them to Corpus Christi, and because he had business there. The group proceeded on from Kingsville to Robstown, where the fourth hitch-hiker left the car. The group proceeded on to Clarkwood, where a fifth stop for beer was made. After leaving Clarkwood, while driving the automobile, Cline was hit behind the right ear with some kind of heavy object, the nature of which he did not know. After Cline received the blow, appellant took control of the car and drove off onto a side road. The other two hitch-hikers pulled Cline's head over the back of the front seat and began beating him between the eyes with two beer bottles. Cline testified that one of the beer bottles broke, and that it cut him, the blood from the cut blinding him temporarily. Cline testified that he lost consciousness at about this time. He remembered being thrown out of the car. When he regained consciousness, he was on the side road, and his car was gone. The one-hundred dollar bill was no longer in his billfold. He also found that he was missing a mechanical pencil, a pocket knife and a cigarette lighter. Cline testified that he made his way to a residence nearby, where two sheriff's deputies were called. He was taken to a hospital by the deputies, where he remained for three days.

On cross-examination, Cline stated that he obtained the fifty-dollar cashier's check for the purpose of paying his child support. He testified that the bank re-imbursed the check. He stated that he did not know if the check had been cashed. Appellant's counsel asked Cline if he had told the woman at the residence he approached that

he had a fifty-dollar bill and fifty one-dollar bills, and Cline denied making the statement. Cline was also asked if he told the woman that the three hitch-hikers offered, at Robstown, to pay him if he would take them to Corpus Christi. He denied telling her that the offer was made at Robstown. He further denied telling anyone that the offer was made in Robstown. He was also asked if he had ever told anyone that the hitch-hikers had a gun. Cline admitted that he had told someone that he thought they had a gun at that time.

A Corpus Christi police officer testified that he arrested appellant and two other men, who were the two other hitch-hikers, in Corpus Christi. He found a Scripto pencil and a knife on appellant's person. Cline identified the pencil and the knife as the ones which he had with him at the time of the robbery. A deputy sheriff testified that he first saw Cline at a residence on Shell Road. The officer stated that Cline was bleeding, and was bruised about the face, and behind the right ear.

Another witness, Bobby Byas, testified that sometime in December, 1958, the exact date he could not recall, he saw Otis Pennington and two or three other men, come to his filling station in Corpus Christi. They were driving a 1949 or 1950 model Dodge. They later returned and sold him five white sidewall tires, which were mounted on wheels. The State also offered evidence that Cline's car (a 1949 Dodge) was found on a rural road in Nueces County, with the wheels and tires missing. Two beer bottles, one broken and one whole, and a cigar box were found in the car. One of the bottles and the cigar box bore fingerprints of Lester Adkins and Otis Pennington, respectively.

The appellant testified in his own behalf. He admitted that he had been picked up by Cline, but his testimony differed from Cline's in several respects. In particular, he testified that Cline purchased a bottle of whisky and some grapefruit along the trip, as well as beer. He contended that Cline gave the knife to Pennington to peel the grapefruit, which was to be used as a "chaser" for the whisky. He also testified that he was not certain that he possessed the mechanical pencil at the time of arrest, but he seemed to remember that Cline gave him the pencil to use in writing down the names of potential employers. According to appellant's testimony, at a point outside of Kingsville, Cline told Lester Adkins to either commit an act of sodomy with him, or to fight. Adkins chose to fight. The car was stopped, and the two fought, with Adkins emerging as the victor. Cline told Adkins that if he would stop beating him, that the three could take the car to Corpus Christi, and that they should leave it at a certain "beer joint." Appellant testified that the three took the car, leaving Cline on the road, and drove to Corpus Christi, where the car was left at the beer joint. Appellant also testified that Cline had told him that his original destination was Kingsville.

Appellant raises eight grounds of error in his brief. In his first two grounds, he contends that the trial court erred in excluding evidence of prior inconsistent statements by the complaining witness, Cline. The record reflects that, on Bill of Exceptions, H. L. Handley, a deputy sheriff, testified that Cline had told him at the residence where he went after regaining consciousness, that the hitch-hikers had a gun, that they shot at him, that he had wrestled for the gun, that it fired while he was wrestling, and that it was a .45 automatic. Cline had earlier testified that he had thought that he had been hit with a .45 automatic. He also was asked if he had told "anyone" that the three had a gun. He answered that he had told someone that they had a gun. At no point, prior to the offer of Handley's testimony, was Cline asked if he had made the statement at a particular time or place, or to a particular person.

■ It is well-settled that a proper predicate must be laid before a prior in-

consistent statement may be offered for impeachment purposes. A proper predicate must contain some details in regard to the circumstances in which the statement was made. Thus, it is usually necessary to specify, in the question to the witness, the place, time, and person to whom the statement was made. McCormick and Ray, Texas Law of Evidence, § 693 (2nd Ed.), Wilson v. State, 161 Tex.Cr.R. 152, 275 S.W.2d 798 (1955); Coons v. State, 215 S.W.2d 628 (Tex.Cr.App.1948). Therefore, since Cline was asked only if he had ever made the statement to "anyone," with no further identification of the statement, the exclusion of Handley's impeachment testimony was not error.

Appellant also complains that the impeachment testimony of the witness Carney was also improperly excluded. According to the record, Carney testified, on appellant's Bill of Exception, that Cline had told him, on the night he was taken to the hospital, that he had a fifty-dollar bill (not a one-hundred dollar bill, as Cline testified), and fifty one-dollar bills, and a fifty-dollar cashier's check. He also testified that Cline had told him that his original destination was Kingsville, and that he went on past Kingsville to Robstown, and at Robstown he was offered money to take the hitch-hikers to Corpus Christi. He also stated that Cline told him that he had been shot at twice. There had been no predicate for the admission of such testimony. Cline had not been asked if he had made such a statement to Carney, or if he had made such a statement while in the hospital. The testimony was excluded by the trial court.

At this point, appellant recalled Cline as a witness, and asked him if he had told Handley that the three had a gun and that he had been fired at. Cline admitted telling Handley that he *thought* the group had a gun and that he had been fired at. He also stated that he didn't remember talking to Carney at the hospital.

■ We need not discuss whether an adequate predicate was laid for the admis-sion of Handley's testimony by this subsequent testimony, because Handley was not recalled by appellant and no attempt was made to again offer his testimony. Therefore, there was no error in the exclusion of his testimony. In the case of Carney, after the additional testimony of Cline, he was recalled, and was allowed to testify as to the prior inconsistent statements made to him by Cline at the hospital. Therefore, the testimony having been finally admitted, there was no error. Appellant's first and second grounds of error are overruled.

Appellant contends in his third and fourth grounds of error that the trial court erred in not admitting into evidence the conviction of the complaining witness, Cline, for forgery which occurred on October 16, 1956, and a copy of a Motion to Revoke Probation. Cline received a two-year probated sentence as a result of the conviction. At the time of trial, the probationary period had expired, but at trial, appellant sought to offer a certified copy of a Motion to Revoke Probation, which, according to appellant's counsel, was filed prior to the expiration of the probationary period.

Prior to the commencement of the trial, the court granted the State's Motion in Limine, which prohibited appellant from referring to the forgery conviction. At that time, appellant's counsel contended that a Motion to Revoke Probation had been filed and that the motion was still pending, because the authorities at Victoria, Texas, the place of conviction, could not locate Cline. He stated that the grounds for revocation were that Cline had failed to support his children. He stated that the prior conviction and Motion to Revoke were relevant for the purpose of showing a motive for Cline to fabricate his testimony regarding the robbery. Also, at the time the conviction and motion were offered, appellant's counsel again contended that the Motion to Revoke was filed before the expiration of the probationary period. Counsel also stated that Cline had spent his paycheck and that he (Cline) was afraid that the district attorney in Kingsville, who was

handling the appellant's child support case, would discover that he was unable to pay his child support, and that he would notify the authorities in Victoria. According to appellant's counsel, Cline fabricated the story concerning the robbery in order to conceal the fact that he was unable to pay his child support. In his brief, appellant asserts basically the same theory, although he asserts that Cline had used most of his paycheck to pay property taxes.

Appellant contends that evidence of the forgery conviction was admissible despite the provisions of Article 732 (Acts 1951, 52nd Leg., p. 814, ch. 458, § 1), of the former Code of Criminal Procedure, now Art. 38.29, Vernon's Ann.C.C.P. He contends that it was admissible for the purpose of showing a motive for Cline to fabricate his testimony.

■ We need not decide whether the evidence of conviction would be admissible for the purpose of showing motive, despite Art. 38.29, as appellant contends, because the other evidence which would make the conviction relevant as showing motive is not in the record. Cline testified that he was required to pay child support, but there was no testimony that he had spent his pay for property taxes,[2] or that he had spent it for any other purpose. According to both Cline and appellant's testimony, Cline bought the beer at the various stops along the way. Appellant also testified that Cline bought whisky. However, neither one testified that any large amount was spent for any other purpose. Likewise, there is no evidence in the record to indicate that the authorities in Victoria were looking for Cline, or that they had been unable to locate him. Thus, it appears that even if such a conviction is admissible for the purpose of showing motive, in the instant case the trial court did not err in excluding evidence of the conviction because

no other evidence was offered which would make the conviction relevant on the issue of motive. As the record stands, the conviction alone would not have indicated motive. The conviction, when coupled with the statements of appellant's counsel at trial, and his arguments in his brief, would show motive, but not in terms of the record.

Appellant also contends that the conviction was admissible for impeachment purposes despite Art. 38.29, because the filing of the Motion to Revoke before the expiration of the probationary period served to extend the period for the purposes of the Article. We note that the Judgment of Conviction and the Motion to Revoke do not appear in the record. However, the trial court permitted the reporter to take the copies for purposes of appellant's bill. The copies were marked as Defendant's Exhibit No. 1. Therefore, their exclusion from the record seems to have been the result of oversight. Therefore, for the purposes of this appeal, this Court will consider the copies as being that which appellant's counsel said them to be.

■ In Stover v. State, 365 S.W.2d 808, 809 (Tex.Cr.App.1963), this Court stated:

"The mere fact that a motion has been filed during the probation term alleging a violation of the conditions of probation will not authorize revocation after such term has expired. Only the court's action authorizing the arrest of the probationer, followed by diligent effort to apprehend and hear and determine the claimed violation, can authorize revocation after the probation term has ended." *accord* Pollard v. State, 172 Tex.Cr.R. 39, 353 S.W.2d 449 (1962).

In the present case, appellant has shown only the filing of the motion. In that the filing, by itself, would not be sufficient to revoke the probation, it follows that a

---

2. There was some evidence introduced at the hearing on appellant's application for Writ of Habeas Corpus, which would tend to indicate that Cline did spend some of the proceeds from his check for property taxes, but such evidence cannot be considered in determining whether the trial court erred in excluding evidence at the trial, where such evidence was not before the court at that time.

mere showing of the filing is not sufficient to indicate that the probationary period has not expired for purposes of Article 38.29. Appellant's third and fourth grounds of error are overruled.

■ Subsequent to the trial, appellant filed a Motion for New Trial, pro se, alleging, among other reasons, newly discovered evidence. This motion was not accompanied by affidavits in support of the allegation, and appellant concedes that the motion was not adequate. Fontenot v. State, 426 S.W.2d 861 (Tex.Cr.App.1968); Barrera v. State, 371 S.W.2d 881 (Tex.Cr.App.1963). However, appellant contends that the filing of the improper motion was caused by appellant's failure to have counsel at that time. The record does not indicate whether appellant was represented by counsel at the time of the filing of the motion, although the record contains a letter from appellant and a co-defendant to the trial court, filed more than one month after the Motion for New Trial, in which appellant stated that he had discontinued the services of the trial counsel, and that he was without funds to pay court costs and in which he requested that a transcript and statement of facts be prepared for him. The trial court ordered that a transcript be prepared for appellant.

On the basis of the record, we are unable to determine whether appellant was without counsel at the time he filed the Motion for New Trial and whether the newly-discovered evidence allegation was meritorious. However, if this Court may consider the record of the proceedings in the habeas corpus hearing which was held in the District Court, then such a determination may be made at this time.

■ An appellate court may take judicial notice of its records in the same, or related proceedings involving the same or nearly the same parties. State v. Fuller, 451 S.W.2d 573 [Tex.Civ.App.—Beaumont, 1970—affirmed, 461 S.W.2d 595 (Tex. 1970)]; Gardner v. Martin, 162 Tex. 156, 345 S.W.2d 274 (1961); Victory v. State, 138 Tex. 285, 158 S.W.2d 760 (1942); Ex parte Terwillinger, 231 S.W.2d 447 (Tex. Cr.App.1950); 22A C.J.S. Criminal Law § 564, 31 C.J.S. Evidence § 50(1), (2). Therefore, we conclude that this Court may take judicial notice of the habeas corpus proceedings which are now before this Court.

■ According to the record of those proceedings, appellant was without counsel at the time the Motion for New Trial was filed, and he was indigent. However, we do not feel that the absence of counsel, by itself, compels a reversal in this case. Appellant contends that because he was without counsel, he was unable to file a proper Motion for New Trial and was unable to perfect a Bill of Exceptions to reflect the evidence of Cline's prior conviction. As discussed earlier, the evidence would not have been admissible. In regard to the Motion for New Trial, the habeas corpus record includes an affidavit from a witness not called at trial in support of the claim of newly discovered evidence. Therefore, this Court may consider the Motion for New Trial on its merits. Thus, appellant, who is now represented by counsel, will be in a position to obtain the same relief which he could have received in the trial court.

At the habeas corpus proceeding, appellant offered an affidavit made by the executive vice president of the San Juan State Bank. The affidavit stated that a person representing himself as R. D. Cline cashed a payroll check in the amount of $212.26, receiving in exchange a cashier's check in the amount of $150.00 and $62.26 in cash. The cashier's check had been returned to the bank, bearing the endorsement of "R. D. Cline: and of the tax assessor and collector of Hidalgo County, Texas."

■ It is elementary that a new trial need not be granted unless the defendant shows, among other things, (1) that the evidence was not known to him at the time of trial and, (2) that the failure to know of the evidence sooner was not due to a

want of diligence on his part. 41 Tex. Jur.2d New Trial, § 105. In the present case, neither of these two elements has been shown. The appellant testified that during the course of the trial he had another person call the bank, and at that time he learned that the check had not been issued to Cline in the amount claimed. However, the record does not indicate that the matter was not brought to the trial court's attention in any way at that time. Appellant, who was then represented by retained counsel, did not request a continuance or raise the matter at all. Thus, it appears that the evidence was known to him at the time of trial. Also, at the hearing on the application for Writ of Habeas Corpus, no evidence whatsoever was introduced which would indicate diligence. No evidence was offered which would indicate why the evidence could not have been discovered, through the exercise of diligence, at or before the time of trial. In fact, the habeas corpus record indicates that it was discovered at the time of trial.

 Appellant also contends that because he was without counsel at trial, he was unable to perfect a Bill of Exceptions to reflect the evidence of Cline's former conviction. However, an informal bill was not perfected. Also, as discussed earlier, even if preserved by a proper bill, the evidence, as described by appellant's counsel, would not have been admissible. In any event, even if the evidence had been admissible, its exclusion would have been harmless. During the course of the trial, it was brought out that Cline had been convicted of forgery in Louisiana, and had been convicted on a "hot check" charge in Texas. Thus, for purposes of impeachment, the excluded evidence would have added little that was not already before the court. As for motive, no predicate had been established which would indicate motive. Appellant's fifth and sixth grounds of error are overruled.

In his seventh and eighth grounds of error, appellant maintains that he was denied due process of law because the State knowingly used perjured testimony to obtain the conviction, or alternately, that the State used testimony which it should have known was perjured. Appellant also contends that he was denied due process because the State, after having learned that material testimony was perjured, failed to make an effort to secure a new trial. Appellant refers, in these grounds of error, to Cline's testimony regarding the check and the subsequent information from the bank.

 We note that the United States Court of Appeals for the Fifth Circuit has already passed on appellant's contention in this regard. Huffman v. Beto, 434 F.2d 819 (5th Cir. 1970) cert. denied, 401 U.S. 946, 91 S.Ct. 964, 28 L.Ed.2d 229 (1971). In that case, appellant had raised this same contention in a federal Habeas Corpus Proceeding, arising out of the present conviction, in the United States District Court for the Southern District of Texas. The District Court found that the discrepancy in regard to the source of the one-hundred dollar bill was not such a defect as could have affected the outcome of the trial. The court pointed out that there was no denial that Cline possessed the one-hundred dollar bill. There was only a discrepancy as to its source. This fact, coupled with the undisputed evidence that appellant was found in possession of the mechanical pencil which Cline identified as his, served to render the discrepancy harmless. The court also found that the State did not knowingly use false testimony. The Fifth Circuit Court of Appeals affirmed, pointing out the distinction between *perjured* testimony and *mistaken* testimony.

We agree with the holding of that court. In light of the extensive discussion of this matter in Huffman v. Beto, 434 F.2d 819, we need not discuss it further. We would, however, note in passing that appellant's testimony at the hearing in the State District Court was at variance with his testimony at trial. In particular, at trial, appellant claimed that he did not strike Cline, but that the beating was performed by his

companion, Adkins, as a result of the request to perform an act of sodomy. He admitted that Cline was left by the roadside. At the hearing, appellant testified that he did beat Cline with three beer bottles, as a result of a fight started by Cline. Appellant also stated that the group took Cline to town, and went to the hospital, in contradiction of his trial testimony that Cline was left by the road.

The judgment is affirmed.

DOUGLAS, J., not participating.