In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00205-CR


______________________________




CARLOS A. BIRDOW, JR., Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 336th Judicial District Court


Fannin County, Texas


Trial Court No. 22207




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Carlos A. Birdow, Jr., has filed a notice of appeal from his conviction pursuant to a
negotiated plea agreement of the offense of aggravated assault with a deadly weapon. 

 We have now received the clerk's record in this appeal. (1) On our review of that record, we
note that the trial court's certification affirmatively states this "is a plea-bargain case, and the
defendant has NO right of appeal" and "the defendant has waived the right of appeal." 

 Unless a certification, showing that a defendant has the right of appeal, is in the record, we
must dismiss the appeal. See Tex. R. App. P. 25.2(d). Because the trial court's certification
affirmatively shows Birdow has no right of appeal, and because the record before us does not reflect
that the certification is incorrect, see Dears v. State, 154 S.W.3d 610, 615 (Tex. Crim. App. 2005),
we must dismiss the appeal. (2)


 We dismiss the appeal for want of jurisdiction. 


 Jack Carter

 Justice


Date Submitted: April 9, 2008

Date Decided: April 10, 2008


Do Not Publish

1. This appeal is a companion appeal involving the same appellant to our cause number 06-07-00206-CR (trial court number 22208). The clerk's record in cause number 06-07-00205-CR (trial
court number 22207) contains the judgment and plea agreement for trial court cause number 22208,
and the record in cause number 06-07-00206-CR (trial court number 22208) contains the judgment
and plea agreement for trial court number 22207. An appellate court may take judicial notice of its
own records in the same or related proceedings involving the same or nearly the same parties. 
Fletcher v. State, 214 S.W.3d 5, 7 (Tex. Crim. App. 2007); Huffman v. State, 479 S.W.2d 62, 68
(Tex. Crim. App. 1972). Therefore, we take judicial notice of the records in both cause numbers. 

2. The negotiated plea agreement in this case demonstrates that Birdow's waiver of appeal was
done knowingly, voluntarily, and intelligently. See Ex parte Delaney, 207 S.W.3d 794 (Tex. Crim.
App. 2006) ("One way to indicate that the waiver was knowing and intelligent is for the actual
punishment or maximum punishment to have been determined by a plea agreement when the waiver
was made.").


ape and to the factual sufficiency of the evidence to show that she knew the
allegations were false.

 We first look at the essential elements of the offense of fabricating evidence. Then, after
examining the mandatory steps involved in investigating allegations of sexual abuse, we conclude
that the evidence was legally and factually sufficient to support a finding that an investigation of the
allegation was "pending" when Waldrop presented the audiotape. Further, we examine the record
for evidence that Waldrop reasonably believed the allegations to be true, find no such evidence, and
conclude that the evidence is factually sufficient to support a finding that Waldrop knew the
allegations of sexual abuse were false. Based on those conclusions, we affirm the conviction.

(1) Elements of the Offense of Fabricating Evidence

 A person commits an offense if, knowing that an investigation or official proceeding is
pending or in progress, he or she "makes, presents, or uses any record, document, or thing with
knowledge of its falsity and with intent to affect the course or outcome of the investigation or official
proceeding." Tex. Penal Code Ann. § 37.09(a)(2). In this appeal, Waldrop challenges her
conviction related to the Fannin County Sheriff's Office's investigation on two bases: that no
investigation was "pending" when she delivered the audiotape and that she did not know of the
falsity of the allegations on the audiotape.

 In reviewing the legal sufficiency of the evidence to support a finding of these elements, we
view the relevant evidence in the light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In a factual sufficiency review, we view
all the evidence in a neutral light and determine whether the evidence supporting the verdict is so
weak that the jury's verdict is clearly wrong and manifestly unjust or whether the great weight and
preponderance of the evidence is contrary to the verdict. See Watson v. State, 204 S.W.3d 404, 417
(Tex. Crim. App. 2006); Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).

(2) Legally and Factually Sufficient Evidence Supports a Finding that an Investigation Was
Pending

 

 Waldrop points to Perkins's testimony that he did not begin his part in the investigation until
December 13, the day Waldrop gave him the audiotape, to support her contention that the evidence
failed to show an investigation was pending when she gave him the audiotape. We disagree and look
to the provisions that concern the investigation of reports of child abuse to conclude that an
investigation was, in fact, "pending" when Waldrop presented the audiotape.

 (a) Investigation of Reported Abuse by Parent or Caretaker

 The timing and procedure to be followed in the investigation of allegations that a caretaker
has sexually abused a child are largely dictated by the Texas Family Code and the Texas Code of
Criminal Procedure. Both Codes call for a joint investigation by the appropriate law enforcement
agency and the Texas Department of Family and Protective Services (TDFPS). The Texas Family
Code calls for a "prompt and thorough investigation" of allegations of sexual abuse at the hands of
a person responsible for "a child's care, custody, or welfare." Tex. Fam. Code Ann. § 261.301(a)
(Vernon Supp. 2006). (2) A police officer who takes a report of such allegations must immediately
contact the TDFPS. See Tex. Fam. Code Ann. § 261.105(a) (Vernon Supp. 2006). Milner, one of
the two officers who initially took the report of abuse from Waldrop December 11, testified that he
called the Child Protective Services (CPS) (3) hotline to report the allegations of sexual abuse by the
girls' father. CPS must then assign the case a priority and begin its part in the investigation within
the appropriate time frame. (4) The joint investigation, at this point, may include a visit to the child's
home, an interview, and a medical, psychological, or psychiatric examination of the child. See Tex.
Fam. Code Ann. § 261.302(a) (Vernon Supp. 2006).

 (b) Evidence of Compliance with Investigative Procedure

 CPS Investigative Supervisor Ron Hamilton testified that CPS received the report of sexual
abuse December 12 and promptly scheduled interviews of the girls at the CAC (5) December 13. 
Representatives from the Fannin County Sheriff's Office, BPD, CPS, and the CAC then observed
the interviews of the girls, where it became clear that the allegations were false. The forensic
interviews of the girls were conducted within twenty-four hours of CPS's receipt of the report.

 The required steps in the investigation of the allegations of sexual abuse were set into motion
when Waldrop made her initial report to White and Milner December 11. On December 13,
representatives from the appropriate entities were all involved and had taken the steps required by
the Texas Family Code and the Texas Code of Criminal Procedure to conduct a joint "prompt and
thorough investigation" of this type of allegation. It was on the very same day, and only hours before
the interviews were to be conducted, that Waldrop brought in the audiotape. 

 At the time Waldrop turned over the audiotape, the law mandated that the investigation was
pending. That is to say, the investigation of the sexual abuse allegations was "pending" the moment
Waldrop filed her initial report with White and Milner. In this case, the record shows that the parties
had taken the appropriate steps to initiate the required joint investigation at the time Waldrop
presented the audiotape. Evidence--that Waldrop made the December 11 report, that Milner
reported the allegations to the CPS hotline as required, and that the joint investigation was scheduled
to begin with interviews of the girls at the CAC December 13--is legally sufficient to conclude that
the investigation was "pending" when Waldrop presented the audiotape.

 Evidence that Perkins was not personally involved in the investigation until December 13
is not sufficient to conclude that no investigation was pending when Waldrop turned over the
audiotape to him. Perkins's personal role in the investigation is not the relevant focus. To the
contrary, the law called for a "prompt and thorough" joint investigation the moment Waldrop made
the initial report. The nature of this investigation necessarily involves several people. The steps had
been taken to schedule the interview, which is a portion of the mandatory investigation of these
allegations. The record does show that Waldrop presented the audiotape before the interview and
before any other of the several investigative steps that would have occurred had the interviews not
conclusively shown that the allegations were false; the actual investigation, in other words, was not
quite underway when Waldrop presented the audiotape. Nevertheless, the investigation became
mandatory and, thus, became "pending" when Waldrop made her report of the sexual abuse
allegations to White and Milner. Therefore, the evidence is factually sufficient to conclude that the
mandatory investigation was pending when she presented the audiotape of false allegations. 

(3) Factually Sufficient Evidence Supports Finding that Waldrop Knew the Allegations Were
False


 From the audiotape, the CAC interviews, and the testimony, the jury could have reasonably
inferred that Waldrop felt the need to coach and prompt the younger daughter and to write down a
scripted version of alleged events because Waldrop knew the allegations to be false. See Waldrop
v. State, cause number 06-06-00173-CR. It was reasonable to conclude that, had the allegations been
true, such instruction would likely have been unnecessary. No evidence in the record suggests that
the allegations were true or that Waldrop had reason to believe those allegations were true. We,
therefore, conclude that the evidence that Waldrop knew the allegations on the audiotape were false
is factually sufficient to support the jury's verdict. 

(4) Conclusion

 Viewing the evidence in a light most favorable to the verdict, we conclude that a rational trier
of fact could have found beyond a reasonable doubt the essential elements of the offense under
Section 37.09(a)(2) of the Texas Penal Code. The evidence demonstrates that the mandatory
"prompt and thorough investigation" of the allegations was pending when Waldrop presented the
audiotape even though one officer testified he was not personally involved until the day Waldrop
brought the audiotape. Further, the evidence does not suggest that any other individual made the
audiotape or that Waldrop reasonably could have believed the allegations to be true. Viewing this
evidence in a neutral light, we conclude that the evidence supporting the verdict is not so weak that
the verdict is clearly wrong or manifestly unjust. We overrule Waldrop's points of error.

 We affirm the trial court's judgment.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: January 24, 2007

Date Decided: March 22, 2007


Do Not Publish
1. In a related appeal, Waldrop appeals her conviction for fabricating evidence with respect to
the BPD's investigation of the allegations of sexual abuse. See Waldrop v. State, cause number 06-06-00073-CR.
2. This section has been amended since December 11, 2004, but the amendments are
nonmaterial.
3. CPS is the division of the TDFPS charged with investigating reports of abuse and neglect
of children. See 40 Tex. Admin. Code Ann. § 107.1605(b)(1)(B)(i)(I).
4. Reports involving children who appear to face an immediate risk of abuse or neglect that
could result in death or serious harm are considered Priority I matters. See 40 Tex. Admin. Code
Ann. § 700.505(b)(1). CPS must initiate an investigation within twenty-four hours of receiving a
Priority I report and within ten days of receiving a Priority II report. See Tex. Admin. Code Ann.
§ 700.505(a). The prompt investigation of the allegations here suggests that CPS considered this
report a Priority I matter. 
5. According to Hamilton, victims of alleged sexual abuse are referred to the CAC.