**William Ray McGARY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1110–86.**

Court of Criminal Appeals of Texas, En Banc.

May 4, 1988.

Clyde A. Wilson, Jr., Greg Gossett, San Angelo, for appellant.

Gerald A. Fohn, Dist. Atty., San Angelo, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was convicted of murder. V.T. C.A., Penal Code, § 19.02(a)(1). The jury assessed his punishment at life imprisonment.

On appeal the appellant, inter alia, contended in his first point of error that the "trial court erred by admitting into evidence the written statement which a defense witness [Myren Nell Breeden] had given to the police." The contention centered on the improper impeachment of the said witness. On original submission the Austin Court of Appeals sustained the contention and reversed the conviction. Subsequently the court granted the State's motion for rehearing, withdrew its earlier opinion and substituted an unpublished opinion in lieu thereof, affirming appellant's conviction. *McGary v. State* (Tex. App.—Austin, No. 3–85–197–CR—July 23, 1986). In the latter opinion the Court of Appeals found that appellant had failed to preserve for appeal the issue of improper impeachment. The court declared that "[b]y limiting his objection to the predicate laid for Breeden's testimony, appellant has failed to preserve for appeal the issue of its admissibility. *Hulin v. State*, 438 S.W.2d 551 (Tex.Cr.App.1969)." It was the court's position that appellant's trial objection was limited to the failure to lay a proper predi-

cate for admission of Breeden's statement to police whereas on appeal "appellant refers only to the admissibility of Breeden's statement, not to the predicate." Thus the objection at trial was not the same as the complaint raised on appeal, presenting nothing for review. This Court granted appellant's petition for discretionary review to determine the correctness of such holding as the same conflicts with prior decisions of this Court. Rule 200(c)(1), Tex. Rules of App.Proc.

At trial there was no dispute that appellant McGary shot the deceased, Mitchell Shane Watkins, in the chest with a shotgun. The issue in dispute was whether the shooting was accidental or intentional. Three persons other than the appellant witnessed the shooting. Lisa Hough Watkins [1] supported the State's theory of the case that the shooting was intentional. Lisa Watkins stated that on April 17, 1985, she had been living at Myren Breeden's house for about two weeks, that appellant also stayed there at the request of Breeden's husband from whom she was separated. About noon on April 17, 1985, appellant entered the house asking for his pistol, saying he was going to kill "Shane [deceased] or Bo [Binyon], either one." Appellant told Lisa "They ripped me off for an eight ball," which Lisa described as meaning "approximately three and a half weight grams of methamphetamine." Appellant then loaded a shotgun and went outside and Lisa followed. She related the deceased came walking toward the appellant asking "What are you doing?" When the men were about four feet apart appellant shot the deceased in the chest. When Lisa asked the appellant "Why, Billy?" he answered, "They'll learn. They'll learn." Lisa testified she had knowledge of drug usage and sale, that she was using drugs at the time, but later tried to indicate the drugs were prescription drugs. She testified the deceased used drugs on occasion

but refused to answer the question whether he sold drugs. The parties entered a stipulation as to Jerry Binyon's testimony. The brief stipulation read to the jury reflected that Binyon, if called as a witness, would testify the deceased Watkins walked up to the appellant and put his hand around the barrel of the shotgun and was then shot by the appellant at 519 Pulliam Street, San Angelo, on April 17, 1985.[2]

Myren Nell Breeden testified for the defense. She related that appellant came to her house where he had been staying on the morning of the shooting, that he came into the house and got his shotgun and went back outside where the deceased Watkins and Binyon were. Breeden followed the appellant outside and testified an argument ensued. Breeden saw Binyon begin to circle behind the appellant and she yelled a warning to the appellant, that the appellant turned his head in response to her warning, at which time the shotgun went off, with the shot hitting Watkins in the chest.

On cross-examination the State established that Breeden had been using "speed" (methamphetamine) on the day in question, that she did smoke marihuana, and had been under psychiatric care four years before trial. The district attorney then called her attention to a written sworn statement given on April 17, 1985 (time) at the police station (place) to Detective Rudy Sosa (person). Breeden identified her signature on the statement and admitted giving the statement to Sosa following the shooting. She stated she could not read and that Sosa had the statement read to her by some lady, that she had initialed several places where corrections were made. When asked if she had told the jury what she had told Sosa she answered, "No, I did not ... Because I was told to keep a lot of stuff out of it." Witness Breeden

---

**1.** The witness acknowledged that she and the deceased had not been legally married, and were separated at the time of the shooting. She related she began using the Watkins name several weeks after the shooting which was about the time of the birth of her son by the deceased Watkins.

**2.** The record reflects that Binyon was available, but apparently neither the State nor the appellant were anxious to call him as a witness.

told the prosecutor she was telling the truth to the jury, that she knew about the law of perjury, and she didn't want to change her trial testimony. In answer to specific questions she admitted to the prosecutor that she told Sosa that the appellant had shot Watkins while Watkins had his hands up in the air, that Binyon was by the truck when the shot was fired, but "that wasn't the way it happened."

On recross-examination the district attorney offered into evidence the written statement. The record reflects:

"MR. FOHN: Okay. At this time we offer, Your Honor, for impeachment purposes States' Exhibit No. 9.

"MR. WILSON [Defense Counsel]: Your Honor, the only reason I object is because I believe the proper way is to ask her if she said something within that statement, and with specificity, and to allow her to admit or deny whether she said that. For that reason, we would object.

"THE COURT: Overrule the objection. 9 is admitted."

The prosecutor was then permitted to read to the jury the entire statement.

Thereafter the appellant, age 38, testified in his own behalf. He was good friends with Watkins, the deceased, and had known him about five years. He had known Binyon about a year. Appellant knew each man carried a knife. On the night of April 16, 1985, appellant was at the house of a friend named Claire when the two men asked to borrow appellant's car to collect on "some drug deals." When they returned the car to Claire's apartment the next morning where appellant had spent the night. Watkins and Binyon wanted to borrow $100.00 from appellant to "score an eight ball," "to get some dope." Appellant refused, telling them he needed the money for rent and moving which he and Breeden had planned to do that day. Appellant related Watkins became "pretty upset" and Binyon kept walking behind him with his hand in his pocket. Appellant then agreed to go to 519 Pulliam where he was living at the time and give the money to the men there. Upon arriving there appellant stated he went into the house and got a shotgun to defend himself as "they had that knife" and were in "pretty bad shape" wanting a "shot of dope." When he went outside appellant saw Watkins kneeling, looking under the seat of appellant's car. When asked what he was doing Watkins said he was looking for a book which had a list of the people who owed him money on drug sales. Appellant related that when Watkins got up and saw the shotgun "he just went crazy" and came towards the appellant. Appellant also saw Binyon begin to move, and heard Myren Breeden yell to him "Watch out, Billy." As he turned to glance at Binyon appellant stated Watkins grabbed the shotgun and it discharged; that he did not voluntarily or intentionally pull the trigger; that the shotgun fired only when Watkins grabbed the shotgun. Appellant then went into the house to see that an ambulance had been called. He was arrested at the scene.

The State offered evidence that it took in excess of five pounds to depress the trigger on the shotgun in question, and it did not have a hair trigger, that the hammer had to be cocked before firing. Other evidence showed that when Detective Sosa arrived at the scene two minutes after receiving the call he found the boots had been removed from the body of the deceased and a bag of marihuana was lying nearby. The autopsy showed that the deceased was under the influence of marihuana at the time of his death. A knife was found among the deceased's belongings after he was taken to the hospital.

Here we are confronted with a question of proper proof of inconsistent statements (self-contradiction). In 1 Ray, Texas Law of Evidence, § 687, p. 625 (Tex.Practice, 3d ed. 1980), it is written:

"The general theory of this kind of evidence is the same as that of contradiction by other witnesses, i.e., to show that the witness has a capacity for making errors. From his error on one point it may be inferred that he has erred on other matters. But the manner of establishing the specific error is different here. In the contradiction already con-

sidered the statements of other witnesses were relied on to show the error. Here the witness' own prior statement in which he gave a contrary version, is used. Since his previous statement and his present testimony are contradictory, one of them must be erroneous. Therefore he had made an error. But, as in contradiction by other witnesses, the inference to be drawn is indefinite, i.e., merely a capacity to make errors. No specific defect is proven. It should be noted, however, that this method of impeaching the witness is stronger and more effective than the preceding method. The very fact of the two inconsistent statements shows an error, while in the other method the opposing witnesses must first be believed before the error appears."

It is axiomatic that when impeaching a witness through the use of a prior inconsistent statement the examining attorney must follow a certain procedure to lay the predicate for introduction of the statement into evidence where that is permissible.

In *Huffman v. State*, 479 S.W.2d 62 (Tex.Cr.App.1973), it was held that proper predicate must be laid before prior inconsistent statements may be offered for impeachment purposes, and it must contain some details in regard to the circumstances in which the statement was made; thus it is usually necessary to specify, in the question or questions to the witness, the place, time and person to whom the statement is made.

In *Huff v. State*, 576 S.W.2d 645, 647 (Tex.Cr.App.1979), this Court wrote:

"The proper predicate for impeachment by prior inconsistent statement requires that the witness first be asked if he made the contradictory statement at a certain place and time, and to a certain person. *Ellingsworth v. State*, Tex.Cr. App., 487 S.W.2d 108; *Huffman v. State*,

Tex.Cr.App., 479 S.W.2d 62. If the witness denies making the contradictory statement, it can then be proved by the prior inconsistent statement. *Ellingsworth v. State*, supra; *Thrash v. State*, Tex.Cr.App., 500 S.W.2d 834. If the witness admits the prior inconsistent statement, however, the prior statement is not admissible. *Wood v. State*, Tex.Cr.App., 511 S.W.2d 37." See also *Moore v. State*, 652 S.W.2d 411, 413 (Tex.Cr.App. 1983); *Haynes v. State*, 627 S.W.2d 710, 712–713.

In 1 Ray, Texas Law of Evidence, § 692, p. 633 (Tex.Practice, 3d ed. 1980), it is written:

"... that before a witness could be impeached by prior inconsistent statements a predicate must first be laid. This consists in asking the witness, on his cross-examination, whether he made the alleged contradictory statement. The witness is thus warned that the statement will be used against him. He is given an opportunity to deny it and prepare to disprove it, or if he admits making it, to explain the statement. This rule is recognized in almost all jurisdictions...."

As noted earlier, if the witness unqualifiedly [3] admits making the prior inconsistent statements, this precludes further proof the statement such as the introduction of the statement into evidence. See *Haynes*, supra; *Huff*, supra; *Kepley v. State*, 320 S.W.2d 143, 145 (Tex.Cr.App. 1959); 1 Ray, Texas Law of Evidence, § 695, p. 640 (Tex.Practice, 3d ed. 1980).[4] The rule is explained in *Wood v. State*, 511 S.W.2d 37, 43 (Tex.Cr.App.1974), that "under circumstances the witness has performed the act of impeachment upon himself or herself." *Sloan v. State*, 129 Tex. Cr.R. 131, 84 S.W.2d 484 (1935); *Kepley*, supra; *Cherb v. State*, 472 S.W.2d 273, 278

3. Where the admission is only qualified or partial and not unequivocal the statement may be used to impeach him. *Wyatt v. State*, 38 Tex.Cr. R. 256, 42 S.W. 598 (1897).

4. Rule 612(a), Texas Rules of Criminal Evidence, specifies that "if the witness unequivocal-

ly admits having made the statement, extrinsic evidence of the same shall not be admitted." This rule did not become effective until September 1, 1986, and was not applicable to the instant case. However, the rule is in accord with the past practice.

(Tex.Cr.App.1971), Judge Hurt stated in *Walker v. State,* 17 Tex.App. 16 (1884): "When the contradictions are confessed, evidently there is no use or purpose for the impeaching testimony; for this work he performs upon himself." See also 1 Ray, Texas Law of Evidence, § 695, 640 (Tex.Practice, 3d ed. 1980).

■ Generally, under such rule where the prior inconsistent statement is in writing,[5] and the witness unequivocally admits making such statement, the instrument itself is not admissible, but the examining attorney may ask about specific sentences, remarks, or things in the prior statement. If the witness admits the remarks, etc., then the witness has impeached himself, and no portion of the written statement is admissible. If the witness admits making the written statements but upon inquiry denies portions of the statement, then the portion that contradicts the witness and only that portion may be proven for the purpose of impeachment. See and cf. *Ellingsworth v. State,* 487 S.W.2d 108 (Tex. Cr.App.1972) (involving examining trial testimony). The fact that a statement contains portions which might impeach a witness will not furnish the proper predicate for the admission of the entire statement. *Ellingsworth,* supra.

■ Appellant's objection to the admission into evidence of the entire written statement of Breeden referred to the foregoing procedure and pointed out to the court that it was not being followed in the prosecutor's attempt to impeach Breeden. The witness was not given an opportunity to admit or deny many of the statements in the written instrument.

The objection was sufficient to alert the trial court of the error complained of on appeal. The Court of Appeals, in its second panel opinion, viewed the objection solely as to the lack of a proper predicate and not an objection to the admissibility of the entire written statement. It then concluded that the complaint on appeal was as to admissibility and the objection at trial was to the lack of a predicate, the complaint and objection were not the same and nothing was presented for review on appeal.[6] We are not able to follow such reasoning. When the law requires that a proper predicate be laid before certain evidence is deemed admissible in evidence, an objection to the lack of a predicate is necessarily an objection to the admissibility of the evidence in question. Further, appellant's brief before the Court of Appeals clearly relies upon both lack of predicate and improper admission.

■ We conclude that the trial court erred in overruling appellant's objection and admitting into evidence the written statement of Breeden which was then read to the jury. It is true that Breeden admitted making the prior statement. The State then properly interrogated Breeden in its

---

**5.** "The form of the inconsistent statement is immaterial. It may be either oral or written." 1 Ray, Texas Law of Evidence, § 696, p. 640 (Tex.Practice, 3d ed. 1980). It must be remembered that many of the cases discussing the rule involved inconsistent oral statements made to another person. The procedure to be used when the statement is oral is many times simpler than when a written instrument is involved.

**6.** The cases relied upon by the Court of Appeals are distinguishable. In *Hulin v. State,* 438 S.W.2d 551 (Tex.Cr.App.1969), the complaint on appeal was that the trial court erred in admitting a prior consistent statement when the State's witnesses had not impeached in any way, thus bolstering the witness. The objection at trial had simply been that "there hasn't been any proof that there was a statement" or that it had not been "proved up." There it was held that when the statement was offered the complaint urged on appeal was not called to the trial court's attention, and no error was presented for appellate review. In *Ashford v. State,* 502 S.W.2d 27 (Tex.Cr.App.1973), the defendant on appeal complained that the trial court erred in admitting testimony of his in-court identification because it had been tainted by a photographic pretrial process which was impermissibly suggestive and that he had been denied due process and the right to counsel after indictment. He also urged on appeal that such evidence was harmful and constituted bolstering. However, the only trial objections were to the fact that a proper predicate had not been laid and to certain written matter on the back of the one photograph which was obliterated. This Court concluded the objection at trial was not the same as the complaint on appeal and no error on appeal was presented. *Hulin* and *Ashford* are clearly distinguishable from the instant case on the facts.

attempt to impeach her by asking specific questions about certain portions of the written statement which she admitted making. The State then abandoned that procedure and offered the entire statement into evidence which included matters not specifically asked about and immaterial matters upon which it appears would have been improper for the prosecutor to impeach.[7]

We hold that the admission of the entire statement under the circumstances was error and the reading of the same to the jury was improper impeachment. Whether the shooting was intentional or accidental was a hotly disputed issue and Breeden's testimony was important to the defense. Further, one of the prosecutors in his argument at the guilt stage of the trial, albeit without objection, did not limit the use of the statement to the purpose for which it was admitted—impeachment, but urged the jury to read the statement and compare it to the testimony of Lisa Watkins, the State's chief witness on intentional shooting to see how similar the statement was and how it supported Lisa Watkins' testimony. Rule 81(b)(2), Texas Rules of Appellate Procedure, provides:

> "(2) Criminal Cases. If the appellate record in a criminal case reveals error in the proceeding below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment."

Under such standard we cannot conclude that the improper impeachment was harmless beyond a reasonable doubt. See and cf. *Huff,* supra, at 648.

The judgments of the Court of Appeals and the trial court are reversed and the cause remanded to the trial court.

---

**7.** See 1 Ray, Texas Law of Evidence, § 690 (Tex. Practice, 3d ed. 1980) (Statements as to collateral matters may not be used to impeach). See also § 697 of the same authority.