Opinion of December 19, 2002,Withdrawn; Affirmed and Corrected Majority
and Concurring Opinions filed January 9, 2003









Opinion of December
19, 2002,Withdrawn; Affirmed and Corrected Majority and Concurring Opinions
filed January 9, 2003.




 
 
 
 
 
 
 
 
 
 
 
 
 
  
 




 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-01-01159-CR

NO. 14-01-01160-CR

____________

 

FRANK SIDNEY
FERGUSON, Appellant

 

V.

 

THE STATE OF TEXAS,
Appellee

 




 
 
 
 
 
 
 
 
 
 
 
 
 
  
 





 
 
 
 
 
 
 
 
 
 
 
 
 
  
 




On Appeal from 179th
District Court

                                                           Harris
County, Texas

Trial Court Cause
Nos. 826,950 & 826,949




 
 
 
 
 
 
 
 
 
 
 
 
 
  
 





 
 
 
 
 
 
 
 
 
 
 
 
 
  
 




 

C O
R R E C T E D   M A J O R I T Y   O P I N I O N

In
October 1999, appellant Frank Sidney Ferguson assisted three current or former
peace officers in stopping a motor home, in which they found what appeared to
be fifty kilograms of cocaine.  Shortly
thereafter, appellant assisted in a raid on a Astash house@ from which $50,000 in cash
was recovered.  








But
a jury found they were acting as outlaws, not officers of the law.  According to three accomplices who testified
at appellant=s
trial, their operations were one of several Adrug rip-offs@ in which renegade officers
would steal narcotics and money under the pretense of conducting police raids,
sell the narcotics, and keep the proceeds for themselves.  According to their testimony, appellant
participated in several such heists for a fee of $5,000, driving up in his
Houston Police Department patrol car to make their activities look Aofficial.@

The
October 1999 heist was a sting operation involving 41 officers and several law
enforcement agencies.  The motor home and
the Astash
house@
were wired for video and audio surveillance, a tracking device was placed in
the cocaine,[1]
and the movements of the participants were further tracked by ground and
helicopter units.

A
jury found appellant guilty of burglary (assessing ten years in prison) and
possession with intent to deliver at least four hundred grams of cocaine
(assessing forty years in prison and a $10,000 fine).  He presents three evidentiary questions on
appeal, which we review for an abuse of discretion.  Burden v. State, 55 S.W.3d 608, 615
(Tex. Crim. App. 2001).

Prior
Inconsistent Written Statement

Appellant=s first complaint concerns
his attempt to impeach one of his associates, Michael Wagner, with a prior
written statement.  Shortly after the
arrests, Wagner wrote a detailed, nine-page statement in which he attempted to
prove the heist was a legitimate police raid and not a crime.  After reaching a plea agreement with the
State, Wagner abandoned this version of events and testified against appellant.[2]  








During
cross-examination, appellant=s
counsel questioned Wagner about the statement, and sought to introduce it in
its entirety:

Q:    Did
you, up to the time that you cut a deal with the State, take the position and
tell other people that, in fact, this was a legitimate drug arrest and y=all were a victim of circumstance?

A:     [by
Michael Wagner] Yes, sir.

.       .      
.

Q:    I=m handing you Defense Exhibit No.
1.  That=s something you and your brother
prepared; is that correct?

A:     Yes,
sir, it is.

Q:    And
when did you and your brother prepare that?

A:     This
is back when I first got out of jail.

Q:    All
right.  Now up to the time of you making
a deal with the State for a reduced sentence, that was kind of your position in
this thing, wasn=t
it?

A:     Yes,
sir.

[By defense
counsel]:  At this time I move to
introduce Defendant=s Exhibit No. 1.

The
State=s attorney objected:

[By
prosecutor]:  It=s improper
impeachment under Rule 613(a).  He has
unequivocally admitted this is his statement; therefore, no extraneous evidence
of that statement is to be admitted before the jury . . .

The trial judge sustained the
objection.  The court also instructed
counsel not to Ago
into@
the contents of the statement, although it is not entirely clear whether
counsel=s
request or the court=s
ruling pertained to every line or only limited parts of the statement.[3]








Rule 613 prohibits
extrinsic evidence of an inconsistent statement unless the witness denies it:








In
examining a witness concerning a prior inconsistent statement made by him,
whether oral or written, and before further cross-examination concerning, or
extrinsic evidence of, such statement may be allowed, the witness must be told
the contents of such statement and the time and place and the person
to whom it was made, and must be afforded an opportunity to explain or
deny such statement.  If written, the
writing need not be shown to him at that time, but on request the same shall be
shown to opposing counsel.  If the
witness unequivocally admits having made such statement, extrinsic evidence of
same shall not be admitted. . .

Tex. R. Evid. 613(a)
(emphasis added).  The rule is not as
complicated as it looks; only three elements are required as a predicate for
admission of a prior inconsistent statement:

$                  
identification of
the statement (by time, place, and person),

$                  
a summary of the contents, and

$                  
a denial by the witness as to
what the statement contains.

Here,
counsel=s
cross-examination established only the first twoChe identified the statement
and summarized its contents.  Because
Wagner admitted the statement=s
contents, the trial court correctly refused to admit anything at that point.

But
it was error if the trial court prevented any further questions about any part
of the statement.  In the statement,
Wagner made direct references to appellant=s
innocence, declared the State=s
informant untrustworthy (giving reasons for that opinion), and alleged the
police could not have known whether their actions were legitimate or
criminal.  He also explained his
involvement, even though he was not a police officer.  The jury heard none of these statements, and
Wagner was never called upon to admit or deny their validity.

The
trial court had discretion to prevent impeachment with every sentence in the
nine-page statement, but not to limit cross-examination to the whole document
rather than portions of it.  See
McGary v. State, 750 S.W.2d 782, 787 (Tex. Crim. App. 1988) (holding
witness may be asked about portions of statement and, if denied, request
admission of that portion).  








Nevertheless,
assuming this was the trial court=s
ruling, appellant has not shown how he was harmed.  First, his counsel made no offer of proof
detailing the questions he wanted to ask or the specific inconsistent
statements he wanted to use for impeachment. 
See Tex. R. Evid. 103;
Tex. R. App. P. 33.2.  Indeed, when the trial judge invited him to
do so, he insisted he wanted admission of the whole statement.  Thus, it is impossible for us to assess harm
without constructing the cross-examination ourselves, which we cannot do.  Moreover, as discussed more fully below,
appellant=s
involvement in this crime was confirmed by numerous witnesses (including
several participants).  We are convinced
beyond a reasonable doubt that no impeachment using Wagner=s statement would have
altered the outcome of appellant=s
trial.  See Tex. R. App. P. 44.2(a).  We overrule appellant=s first point of
error.  

Understanding
of the Law

In
his next issue, appellant argues the trial court erred in limiting
cross-examination of Eric Gibson, another accomplice who testified against him
at trial.  After questioning Gibson about
his own plea agreement with the State, appellant asked Gibson the following
question:

Q:    Can
you tell the jury what your understanding of deferred adjudication probation
is?

The
court sustained the State=s
objection to the question.  

The
question clearly asks for Wagner=s
opinion of a legal term.  Opinion
evidence as to legal terms is inadmissible. 
See Mays v. State, 563 S.W.2d 260, 263 n.3 (Tex. Crim. App.
1978).  If what counsel meant to
ask was whether Gibson thought he might escape jail time by changing his story,
he should have asked that question.  See
U.S. v. Wallace, 32 F.3d 921, 926 (5th Cir. 1994) (affirming limits on
cross-examination of witness that allowed questions as to sentence he thought
he might receive, but disallowed questions asking for legal conclusions); U.S.
v. Stafford, 983 F.2d 25, 27 (5th Cir. 1993) (affirming exclusion of
written materials on tax law, but allowing witness to testify as to effect of
materials on his beliefs).  Because he
did not, we hold the trial court committed no error.

 

 








Out-of-Court
Identification

In
his final issue, appellant complains of the admission of an out-of-court
identification.  During the trial,
Officer James Campbell testified that Francisco Perez identified appellant from
a photo spread as a participant in a previous counterfeit raid.  In response to appellant=s hearsay objection, the
State asserted the identification was a present sense impression.  See Tex.
R. Evid. 803(1).  The trial court
overruled the objection.

This
was not a present sense impression, as the statement was made long after the Araid@ occurred.  Wood v. State, 18 S.W.3d 642, 651B52 (Tex. Crim. App. 1999)
(holding statement not connected to contemporaneous observation was not present
sense impression).  Because Perez did not
testify at trial, Officer Campbell=s
testimony was hearsay, and the trial court erred in overruling appellant=s objection.

Nonetheless,
we find the error harmless because it did not affect appellant=s substantial rights or the
jury=s
verdict.  Tex. R. App. P. 44.2(b); see Johnson v. State,
43 S.W.3d 1, 3-4 (Tex. Crim. App.2001). 
Before Campbell testified, Eric Gibson admitted involvement in the
previous Araid,@ and testified that
appellant participated in it as well. 
Thus, Perez=s
identification was cumulative and harmless. 
See Reyes v. State, 84 S.W.3d 633, 638 (Tex. Crim. App.
2002).

Moreover,
the entire crime here was videotaped.  It
was undisputed that appellant drove his marked police car outside his assigned
area and without permission; that he stopped the motor home, though there was
no traffic violation to justify the stop; and that he then followed the other
participants to the house where the money was located, leaving after receiving
a sign from inside the house.  Three
associates testified to his involvement and his receipt of $5,000.  Given appellant=s use of his badge to
commit crime rather than stop it, his sentence is no more (and perhaps less)
than one might expect.  We conclude that
any error did not have a substantial and injurious effect on the jury=s verdict.  








The
judgment is affirmed.

            

/s/        Scott Brister

Chief Justice

 

Judgment rendered
and Corrected Majority and Concurring Opinions filed January 9, 2003.

Panel consists of
Chief Justice Brister and Justices Hudson and Fowler. (Hudson, J. concurring).

Publish C Tex. R. App. P. 47.2(b).











 
 
 
 
 
 
 




Opinion of December
19, 2002 Withdrawn; Affirmed and Corrected Majority and Concurring Opinions filed
January 9, 2003.

 

 

 

                                                                                                                                                            

 

 

In The

Fourteenth
Court of Appeals

____________

NOS.
14-01-01159-CR & 14-01-01160-CR

____________

FRANK SIDNEY FERGUSON,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



On Appeal from the 179th District Court

Harris County, Texas

Trial Court Cause Nos. 826,950 & 826,949

 



 

C O R R E C T E D   C O N
C U R R I N G   O P I N I O N

 








As the majority has explained, Eric Gibson, an accomplice, was
called by the State to testify against appellant.  On direct-examination, Gibson admitted he had
initially been charged with possession of cocaine with intent to deliver.  Thus, he was subject to a potential
punishment ranging from 15 years to life in the state penitentiary.  Thereafter, in exchange for his testimony,
the State agreed to reduce the charge to mere possessionCthereby
reducing the range of punishment to 10 years to life with a possibility of
probation.  The State also agreed to
include a letter in Gibson=s file detailing his cooperation with the State.  Finally, the State was instrumental in
reducing his bond to $20,000, permitting Gibson to get out of jail prior to
sentencing.

On cross-examination, Gibson also admitted that part of his
agreement with the State was that his maximum punishment would be Acapped@
at 30 years;  thus, the actual range of
punishment was 10 to 30 years in the penitentiary with a possibility of
probation.  Gibson further testified that
he would be eligible for parole after serving one half of any sentence that
might be imposed against him.  Counsel
pursued this inquiry as follows:

Q.  [APPELLANT=S
COUNSEL]:  Mr. Gibson, had you been tried
on the original charge, you would not be eligible for probation, would you?

A.  No, I would not.

*  *  *

Q.  And you won=t
be sentenced until you have concluded your agreement [to testify for the
State];  is that correct?

A.  That=s
correct.

Q.  Let me ask you this:  Has anybody explained to you or talked about
the term, a Adeferred
adjudication probation@?

A.  My lawyer has talked to me about that.

Q.  Can you tell the jury what your understanding
of deferred adjudication probation is?

[STATE=S
ATTORNEY]:  Object to the relevance of
this, Your Honor.

THE
COURT:  Sustained.

[APPELLANT=S
COUNSEL]:  Judge, you know I won=t
argue with you, but it impacts on his making a decision;  and if it=s
still the same ruling, I=ll move on.

THE COURT:  I=ve
already ruled.








Under Texas law, a witness may not give legal conclusions or
interpret the law to the jury.  United
Way of San Antonio, Inc. v. Helping Hands Lifeline Found., Inc., 949 S.W.2d
707, 713 (Tex. App.CSan Antonio 1997, writ denied). 
Moreover, a lay witness=s opinion expressed in terms of legal definitions and
conclusions ordinarily should be excluded. 
Lum v. State, 903 S.W.2d 365, 369 (Tex. App.CTexarkana 1995, pet. ref=d).  A defendant,
however, is entitled to pursue all avenues of cross‑examination
reasonably calculated to expose a motive, bias or interest for the witness to
testify.  Lewis v. State, 815
S.W.2d 560, 565 (Tex. Crim. App. 1991). 
Moreover, evidence to show bias or interest of a witness in a cause
covers a wide range, and the field of external circumstances from which
probable bias or interest may be inferred is infinite.  The rule encompasses all facts and
circumstances which, when tested by human experience, tend to show that a
witness may shade his testimony for the purpose of helping to establish one
side of the cause only.  Jackson v.
State, 482 S.W.2d 864, 868 (Tex. Crim. App. 1972).

Here, the actual meaning and legal effect of deferred
adjudication were not at issue.  Because
the witness could only be influenced by what he believed the law to be,
counsel=s
inquiry was a rational, highly relevant attempt to expose any bias the witness
may have had in testifying for the State. 
Under the circumstances, it made no difference whatsoever whether the
witness=
understanding of deferred adjudication was accurate or erroneous.  The relevant inquiry was simply whether the
witness might be biased by his understanding of deferred
adjudication.  Accordingly, I would find
the trial court erred in sustaining the State=s objection.








In determining whether an improper limitation of
cross-examination requires reversal, an appellate court must consider the
following factors:  (1) the importance of
the witness=s testimony in the State=s case;  (2) whether the
testimony was cumulative;  (3) the
presence or absence of evidence corroborating or contradicting the testimony of
the witness on material points;  (4) the
extent of cross‑examination otherwise permitted;  and (5) the overall strength of the State=s
case.  Shelby v. State, 819 S.W.2d
544, 547 (Tex. Crim. App. 1991);  Drew
v. State, 76 S.W.3d 436, 451 (Tex. App.CHouston [14th Dist.]
2002, pet. ref=d).  Here, Gibson=s
testimony was cumulative and relatively unimportant to the State in light of
the testimony of other witnesses and the corroborative effect of the
surreptitiously recorded videotape showing the commission of the offense.  Accordingly, the error was harmless beyond
any reasonable doubt.

With these observations, I respectfully concur in the Court=s
judgment.

 

 

 

 

 

/s/        J. Harvey Hudson

Justice

 

 

 

 

Judgment rendered and Corrected Majority and Concurring
Opinions filed January 9, 2003.

Panel consists of Chief Justice Brister and Justices Hudson and
Fowler.

Publish C Tex. R. App. P.
47.2(b).

 











                1  Five
kilograms were actual cocaine on loan from a police lab; the remainder was
simulated cocaine.





                [2]   Michael Wagner was charged with burglary of
a habitation, aggravated robbery, aggravated assault, felony theft, and
possession of a controlled substance.  In
return for his testimony at appellant=s trial, the State dismissed
all charges against Wagner except for possession of cocaine, but did not agree
to any recommendation regarding punishment for that charge.   





[3]  THE COURT: 
Well, I sustain the objection to offering the total statement.  Have you got anything else you want while the
jury=s out? 
If you want toCyou can=t just offer . . . 

[APPELLANT=S COUNSEL:]  I understand. 
I did not have to go through and read him each statement in there and
ask him if he=s ever said that before, and I think it
would take up a lot of time of the court.

THE COURT:  Now, you=re not going to do
that, not in front of the jury.

.       .      
.

[COUNSEL:]  The whole statement is [inconsistent].  I can go through item by item from what he
just said.

THE COURT:  I=m not going to argue
with you.  You=ve already developed
in front of the jury that prior to the time that he entered his plea of guilty
a few days ago and in response to the State=s offer to reduce
the charge and him be a witness, that his position was different.  And I=m not going to let
you go through this sentence by sentence or whatever it is.  You=ve already developed
that.

[COUNSEL:]  No, sir. 
I respectfully would point out to the Court that he has taken the
position that he was guilty of the offense and he knew what was going on and he
had knowledge of it and that his brother had knowledge of it and Frank Ferguson
had knowledge of it.  Throughout this
statement, it=s replete with denying those
contentions.  It goes directly to his
credibility, now that he has made statements that are directly contradicting
what he said before, and it goes to his credibility, bias, intent.

THE COURT:  Sustain the objection.  You will not mention that exhibit in any way
in front of the jury.  Bring the jury in.

[COUNSEL:]  Excuse me just a minute.  Before you bring them, when you=re saying that I can=t, can I ask him
direct questions about this?

THE COURT:  No, sir. 
You have already asked him.

[COUNSEL:]  I=m not arguing, your
Honor.  Is the instruction that I cannot
refer to anything in Defendant Exhibit No. 1? 
Is that what you=re instructing me,
not to ask questions about the information contained in Defendant=s Exhibit No. 1?

THE COURT:  Well, counsel, you haveCI mean, you know,
you chose in the beginning to attempt to impeach him by the fact that until ten
days ago, or whatever it was, his story was totally different.

[COUNSEL:]  Yes, sir.

THE COURT:  Now, I am not going toCI=m not going to let
you go through this eight or ten page statement that he has.  

.       .      
.

THE COURT:  . . . I=m not going to let
you go through that statement sentence-for-sentence now.

[COUNSEL:]  And I don=t want to violate
the Court=s ruling, whatever it is.

THE COURT:  I don=t want you to
either. 

[COUNSEL:]  I want the Court to tell me, am I instructed
not to go into the contents of Defense Exhibit No. 1?

THE COURT:  You=re so instructed.