

# NUMBER 13-19-00567-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ISMAEL CASTILLO,                                                              Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

### On appeal from the 347th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Memorandum Opinion by Justice Benavides

A jury convicted appellant Ismael Castillo of capital murder and engaging in organized criminal activity, and he received a mandatory life sentence without the possibility of parole. *See* TEX. PENAL CODE §§ 19.03(a)(2), 71.02(a)(1). In what we have reorganized as three issues, Castillo contends the trial court made two evidentiary errors and one jury charge error, any one of which entitles him to a new trial. We affirm.

## I. BACKGROUND

Around noon on March 14, 2018, Corpus Christi police responded to reports of a shooting on Coleman Street. Deandre Mathis and Christopher Vincent were selling drugs from the residence when two males entered the home and shot them. Mathis later succumbed to his injuries, but Vincent survived. Surveillance video captured two men entering the residence and a third person driving the getaway vehicle. The surveillance video captured the face of one of the men, later identified by police as Ricardo Acuna, but not the other.

After police released images of the getaway vehicle and Acuna to the media, they received an anonymous tip that led them to a nearby tire shop. Security video from the shop placed Castillo, Acuna, and Ariana Carbajal in the getaway vehicle approximately an hour and a half before the shooting. Jamie Morin, the vehicle's owner, testified that Castillo stole the vehicle from him prior to the shooting and then told him after the shooting that he could find the vehicle in Mathis, Texas.

In exchange for a reduced sentence, Carbajal testified as an accomplice witness for the State. According to Carbajal, she, Castillo, and Acuna spent the evening of March 13 and the early morning hours of March 14 smoking methamphetamine. They spent the morning of March 14 driving around looking for more. They picked up two other individuals who identified the Coleman Street residence as a potential place to rob. After driving by the Coleman Street residence, the five of them drove to a nearby convenience store where Castillo and Acuna went inside. Security video from the convenience store captured Castillo and Acuna together inside the store.

2

After they dropped off the other two individuals, they returned to the Coleman Street residence. According to Carbajal, Castillo and Acuna planned the robbery. Carbajal dropped Acuna off down the street from the residence armed with a pistol. After he entered the residence under the guise of a drug buy, Carbajal pulled up to the house where Castillo got out of the vehicle and entered the house with an assault rifle. Carbajal heard several shots, and then Castillo and Acuna ran out of the house, jumped in the car, and yelled at her to "go[!]" They came away with $39. Afterwards, they traveled to various locations, disposing of their guns, clothes, and vehicle along the way, before fleeing to Arlington.

Vincent, the surviving complainant, testified that the first male entered with a pistol and shot Mathis, and then the second male entered with an "AR" and shot him. Vincent positively identified Castillo in the courtroom as one of the shooters based on a tattoo under Castillo's left eye. However, he claimed that Castillo, not Acuna, was the first shooter with the pistol.

Two weeks after the shooting, Pamela Mungina stated in a videotaped interview with police that Castillo, Acuna, and Carbajal stayed with her at her house in Mathis the night after the shooting, and she overheard Castillo on the phone trying to sell an assault rifle. However, at trial, she stated she currently had no recollection of the event and that she was high when she made the video statement. Jose Alaniz and Robert Lopez, both jailhouse informants, testified that Castillo admitted to them his involvement in the shooting. Castillo challenged the credibility of each, suggesting their testimony was motivated by self-interest.

3

Castillo testified in his defense. He acknowledged that he was with Carbajal and Acuna at the tire shop and convenience store, but he claimed they dropped him off at his cousin's house minutes before the shooting. He said that he later visited a Sonic and Whataburger and saw various people throughout the day, but he did not offer any other evidence to corroborate his account. The jury convicted Castillo, and this appeal ensued

## II. EVIDENTIARY RULINGS

By his first issue, Castillo complains the trial court erred by excluding the introduction of a prior inconsistent statement by a witness that had yet to testify. By his second issue, Castillo contends the trial court erred in admitting a letter Carbajal wrote as a prior consistent statement.

### A. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).

### B. The exclusion (initially) of Vincent's prior inconsistent statement

During its opening statement, the State told the jury that Vincent, the surviving complainant, would positively identify Castillo as one of the shooters. The State's first witness, Detective Brenda Garza, interviewed Vincent at the hospital approximately two weeks after the incident, and Vincent told her that one of the two shooters wore a mask (the person identified as Acuna was not wearing a mask in the security videos). As he later explained, Castillo knew from the detective's report that Vincent had not identified

4

him in the interview or mentioned an identifying tattoo under his left eye, and he sought to elicit testimony to that effect during the detective's cross-examination. The State timely raised hearsay objections to Castillo's line of questions and pointed out that Vincent would be testifying later in the trial. Castillo described the purpose of these questions as "a little prior impeachment." The trial court sustained the State's objections.

Castillo acknowledges in his brief that these questions were designed to "discredit" Vincent's anticipated identification of Castillo as the other shooter. According to Castillo, "[a] complete cross-examination confrontation of Detective Garza *prior* to Vincent's testimony would have undermined *his* credibility." (Emphasis added). We are not aware of a right to impeach a witness with a prior inconsistent statement before the witness has even testified, and Castillo has pointed us to no such authority. Instead, it is self-evident that the witness must testify before the right to impeach arises. *See* TEX. R. EVID. 607 ("Any party, including the party that called the witness, may attack the witness's credibility."); *id.* R. 613(a)(1) ("When examining a witness about the witness's prior inconsistent statement—whether oral or written—a party must first tell the witness: (A) the contents of the statement; (B) the time and place of the statement; and (C) the person to whom the witness made the statement."); *McGary v. State*, 750 S.W.2d 782, 786 (Tex. Crim. App. 1988) ("The proper predicate for impeachment by prior inconsistent statement requires that the witness first be asked if he made the contradictory statement at a certain place and time, and to a certain person." (quoting *Huff v. State*, 576 S.W.2d 645, 647 (Tex. Crim. App. 1979))). Even then, the prior inconsistent statement can only be offered for the limited purpose of challenging the witness's credibility unless the statement meets

5

some hearsay exception. *Ramirez v. State*, 987 S.W.2d 938, 944 (Tex. App.—Austin 1999, no pet.) (citing *Jernigan v. State*, 589 S.W.2d 681, 692 (Tex. Crim. App. 1979)).

Here, Vincent's prior statement to Detective Garza about what he observed, made approximately two weeks after the incident and in aid of her investigation, constituted hearsay. *See* TEX. R. EVID. 801(d); *see also Benson v. Chalk*, 536 S.W.3d 886, 896 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (noting that "most prior inconsistent statements are . . . classified as hearsay" (quoting 1 Steven Goode, et al., *Texas Practice Series: Guide to the Texas Rules of Evidence: Civil and Criminal* § 607.2 (4th ed. 2016))). And because Vincent had yet to testify, his prior inconsistent statement could not be offered for the limited purpose of impeachment. *See* TEX. R. EVID. 613(a)(1); *McGary*, 750 S.W.2d at 786. Thus, the trial court did not error in sustaining the State's hearsay objections.

Moreover, after Vincent testified during cross-examination that he did inform Detective Garza about the identifying tattoo, Castillo re-called Detective Garza during his case-in-chief and elicited the very impeachment testimony he complains was excluded:

> [COUNSEL]: Okay. [Vincent] gave you descriptions but weren't they pretty general? Didn't he say the most he could say was about identity or faces is that one had a green bandanna?
>
> [GARZA]: Yes, sir.
>
> [COUNSEL]: And he did not tell you anything about how he could identify 100 percent sure anybody because of a tattoo, did he?
>
> [GARZA]: Correct.
>
> [COUNSEL]: Correct he did not tell you that?

6

[GARZA]:               Right.

Thus, even if the trial court erred by initially excluding the prior inconsistent statement, that error was subsequently cured. *Cf. Siqueiros v. State*, 685 S.W.2d 68, 72 (Tex. Crim. App. 1985) (standing for the proposition that the erroneous admission of evidence can be cured by the subsequent admission of countervailing evidence). In other words, Castillo cannot demonstrate that he was harmed by the alleged error. *See* TEX. R. APP. P. 44.2. We overrule Castillo's first issue.

## C.     The admission of Carbajal's letter as a prior consistent statement

Under Texas Rule of Evidence 801(e)(1)(B), statements that are consistent with the declarant's testimony and offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive are not hearsay. TEX. R. EVID. 801(e)(1)(B). "The trial court has substantial discretion to admit a prior consistent statement even if there has been 'only a suggestion of conscious alteration or fabrication.'" *Fears v. State*, 479 S.W.3d 315, 332 (Tex. App.—Corpus Christi–Edinburg 2015, pet. ref'd) (quoting *Hammons v. State*, 239 S.W.3d 798, 804–05 (Tex. Crim. App. 2007)). There is no bright-line rule to distinguish between a general challenge to the witness's memory or credibility and a suggestion of conscious alteration or fabrication; the trial court should determine if the cross-examiner's question or the tenor of the questioning would "reasonably imply an intent by the witness to fabricate." *Id.* (quoting *Hammons*, 239 S.W.3d at 805). To fall within this hearsay exception, the prior consistent statement must have been made before the improper influence or motive arose. *See Haughton v. State*, 805 S.W.2d 405, 407–08 (Tex. Crim. App. 1990).

7

The following exchange during Carbajal's cross-examination is at issue:

[COUNSEL]:     Let's just kind of start with where you left off. You will lose your deal if you lie, right?

[CARBAJAL]:     Right.

[COUNSEL]:     And who decides whether you lie or not? It is the prosecutor, right?

[CARBAJAL]:     Right.

[COUNSEL]:     You know what the prosecutor seems to believe the evidence shows is that [Castillo], [Acuna], and yourself did this, right?

[CARBAJAL]:     Yes.

[COUNSEL]:     So it would be a lie to him if you say something different than that; is that correct?

[STATE]:     I am going to object. . . .

[COURT]:     I am going to overrule the objection. . . .

[COUNSEL]:     So he would probably decide you were lying if you say something that says that Castillo, Acuna and yourself were not involved in this; is that right?

[CARBAJAL]:     I don't understand what you are trying to say.

[COUNSEL]:     Well, the person that decides whether or not you are telling the truth or not to get your deal; is the prosecutor, right?

[CARBAJAL]:     Right.

[COUNSEL]:     So the truth that we are dealing with is what the prosecutor believes the evidence shows, is that fair enough?

[CARBAJAL]:     Yeah.

During redirect, the State sought to introduce a letter Carbajal wrote to the trial court in

8

2018, prior to her plea agreement with the State. Castillo objected to the letter based on relevance, hearsay, and bolstering. The State argued the letter was admissible under Rule 801(e)(1)(B) to rebut Castillo's suggestion of recent fabrication. The trial court overruled Castillo's objection and allowed Carbajal to read the entire letter for the jury. In the letter, Carbajal briefly acknowledges her role in the shooting as the driver, but the letter is largely a plea for leniency based on what Carbajal sees as mitigating circumstances. Nether Acuna nor Castillo are mentioned by name, and their role in the shooting is only implied in passing.

We find the implication raised by Castillo's questioning to be straightforward—Carbajal aligned her testimony with the State's theory of the case to receive and maintain her plea bargain agreement with the State. Indeed, Castillo posited that although the agreement required Carbajal to tell the truth, the truth "is what the prosecutor believes the evidence shows." Nevertheless, Castillo argues on appeal that he "was not implying any recent fabrication or recent motive to lie" because "Carbajal testified exactly as she had told the police on the day of her arrest in 2018 when confronted with the tire store video." While it is true that Carbajal testified during direct that she positively identified Castillo as a shooter on the day of her arrest, there was no recording of Carbajal's interrogation admitted into evidence or any other corroborating evidence to support her version of events. If Castillo's charge of fabrication was correct, then none of Carbajal's testimony implicating Castillo was credible, including what she claimed she told police at the time of her arrest. Deferring to the trial court's "substantial discretion," we conclude the trial court did not err in admitting the letter. *Fears*, 479 S.W.3d at 332. We overrule Castillo's second

9

issue.

### III.    JURY CHARGE ERROR

By his third issue, Castillo argues the jury charge was unconstitutional because it did not require jury unanimity on the underlying felony. The jury charge explained that a person commits the offense of capital murder "if the person intentionally causes the death of an individual in the course of committing or attempting to commit the offense of robbery *or* burglary." (Emphasis added). As Castillo acknowledges, this is a well-settled area of Texas law: a jury does not need to be unanimous concerning which underlying felony the defendant was in the course of committing when the murder occurred. *See, e.g.*, *Gardner v. State*, 306 S.W.3d 274, 302 (Tex. Crim. App. 2009) (reaffirming *Kitchens v. State*, 823 S.W.2d 256 (Tex. Crim. App. 1991)). We overrule Castillo's third issue.

### IV.    CONCLUSION

We affirm the trial court's judgment.


GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
25th day of February, 2021.

10