**Opinion filed November 12, 2021**



## In The

# Eleventh Court of Appeals

_____

## No. 11-20-00002-CR

_____

### PRENTISS JOE SMITH, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR52224**

### M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Prentiss Joe Smith, of aggravated assault with a deadly weapon, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West Supp. 2021). The same jury acquitted Appellant of the separate charge of intentional or knowing injury to an elderly individual, a first-degree felony. *See id*. § 22.04(a), (e). The trial court assessed punishment at confinement for three years

in the Institutional Division of the Texas Department of Criminal Justice. In his sole issue on appeal, Appellant claims that he was denied his right to cross-examine the complainant in violation of the Confrontation Clause when the trial court prevented him from impeaching the complainant with prior inconsistent statements sworn to in the complainant's affidavit of non-prosecution. We affirm.

*Background Facts*

On July 30, 2018, two police officers responded to a call about a disturbance at the home of Becky Day. Upon arrival, the officers spoke with the complainant, Dolores Day.[1] She appeared to be very distraught and cried intermittently throughout the interview. Day was already a nonagenarian when the altercation transpired and was ninety-two years old by the time of trial. The accuracy or consistency with which Day was able to recall events was in doubt by both parties.

Appellant had a dating relationship with Day's daughter, Becky Day. While unclear as to where Day actually resided, it appears from the record that Day had at least stayed at her daughter's house the night before the altercation with Appellant, and that Appellant was already in the house before Day woke up. Day told the officers that Appellant was upset with her because the house was untidy and that, when Day told him to mind his own business, Appellant threw water on her from a bottle that he was holding. In response, Day took the bottle and threw water in Appellant's face. At that point, Appellant pushed Day either onto the floor or into her chair, before proceeding to brandish a knife and wave it in front of her face. Day testified that she even believed, for a moment, that Appellant had actually cut her face. She further testified that, when Appellant pushed her, this caused her to experience pain in her spine. While waving the knife, Appellant may have told Day

---

[1] We will refer to the complainant as "Day" throughout the remainder of this opinion.

that he was going to cut her with it, though Day denied this during her testimony at trial. Day told the officers that she hated Appellant and wanted to press charges.

Prior to the trial, Day signed a sworn affidavit of non-prosecution in which she stated that she was neither injured nor in pain as a result of the altercation with Appellant. The State had not used or offered the affidavit during its case-in-chief and had not questioned Day regarding the affidavit. On cross-examination, Appellant's trial counsel attempted to introduce the affidavit and the following exchange took place:

Q: . . . I want to hand you this, Dolores. It's called an Affidavit of Non-Prosecution. Do you remember signing this document?

A: What is it?

Q: It's a document that releases . . . [Appellant] from anything that you said he did. . . .

[THE STATE]: Your Honor, I'll object to that. That's a mischaracterization of what that is.

THE COURT: I'm going to sustain that.

Q: . . . Okay. . . . Is this your signature right here?

A: Uh-huh.

Q: It is?

A: Yeah.

Q: It is. Okay. And do you remember signing that?

A: I kind of do, yeah.

Q: Okay. . . . I want you to look at the last sentences right here, the last two, the top paragraph and the next paragraph. Can you read those?

A: Additionally --

Q: Oh, you don't need to read it out loud. . . . [J]just . . . read it.

A: Okay.

Q: Now, is it fair to say that you said that you were both arguing that day and you were not injured and were not -- and you were not in pain?

[THE STATE]: Objection, Your Honor, that's hearsay. It's an out-of-court statement.

THE COURT: I'm going to sustain that.

[Q]: Okay. . . . What does the top paragraph say?

[THE STATE]: I'll object, again, Your Honor, that's hearsay.

THE COURT: Yeah, she cannot just read that report.

Q: In the past, have you made any statements that counter what you said that day? Have you ever told us -- have you ever told my office that you were not in pain the day of the incident?

A: I don't remember saying anything.

Appellant's trial counsel made no further attempt to lay a proper predicate or to use or introduce Day's affidavit of non-prosecution.

Appellant's trial counsel attacked the reliability of Day's memory in other ways. Day was unable to remember telling the police officers, *inter alia*, that one of her dogs scratched her or that she hated Appellant. The jury viewed the body camera footage from the responding officers as well, so the jury was able to see and hear that Day made statements to the officers that were ostensibly inconsistent with her trial testimony.

*Discussion*

Appellant's sole issue on appeal is that the trial court erred in preventing Appellant's trial counsel from impeaching Day with her prior inconsistent statements, as permitted by Rule 613 of the Texas Rules of Evidence. Appellant claims that this was a violation of his right to effectively cross-examine witnesses under the Confrontation Clause. The State counters that Appellant's trial counsel

4

failed to lay the necessary predicate to offer prior inconsistent statements for impeachment purposes and that, in any event, Appellant failed to preserve the issue for appeal.

> *I.  Appellant failed to comply with TEX. R. EVID. 613, and there was no violation of the Confrontation Clause.  Appellant failed to preserve this issue for appeal.*

### A. *Standard of Review and Applicable Law*

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard.  *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016); *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006).  We also review a trial court's decision to limit cross-examination of a witness regarding credibility for an abuse of discretion.  *Walker v. State*, 300 S.W.3d 836, 843 (Tex. App.—Fort Worth 2009, pet. ref'd).  We will not reverse a trial court's ruling unless it falls outside the zone of reasonable disagreement.  *Johnson*, 490 S.W.3d at 908; *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).

The exclusion of potential impeachment evidence may infringe upon an accused's Confrontation Clause rights.  *See Davis v. Alaska*, 415 U.S. 308, 315–16 (1974); *Pointer v. Texas*, 380 U.S. 400, 403–04 (1965); *Johnson*, 490 S.W.3d at 909; *Castillo v. State*, 939 S.W.2d 754, 758 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd).  "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)).  Thus, a defendant, who is afforded great latitude with respect to *the scope* of his cross-examination, must nevertheless comply with the otherwise applicable Texas Rules of Evidence.  However, "if a state evidentiary rule prohibit[s] the defendant from

cross-examining a witness concerning possible motives, biases, and prejudices to such an extent he could not present a vital defensive theory" the Confrontation Clause may also be violated. *Johnson*, 490 S.W.3d at 910. The evidentiary rules at issue in this case are those that limit hearsay and that permit prior inconsistent statements, which would otherwise be hearsay, to be offered for the limited purpose of impeaching a witness. TEX. R. EVID. 613, 801, 802.

Hearsay is an out-of-court statement, including a written statement, that is offered to prove the truth of the matter asserted in the statement, and it is inadmissible absent an exception. *Id.* R. 801, 802. When hearsay is objected to, "it becomes the burden of the proponent of the evidence to establish that an exception applies that would make the [hearsay] admissible." *Taylor v. State*, 268 S.W.3d 571, 578–79 (Tex. Crim. App. 2008). Rule 613 "allows into evidence (for impeachment purposes) proof of a witness's prior inconsistent statements (provided the proper predicate is established)." *Willover v. State*, 70 S.W.3d 841, 846 n.8 (Tex. Crim. App. 2002) (citing Goode, Wellborn & Sharlot, *Texas Practice: Guide to the Texas Rules of Evidence: Civil and Criminal* § 613.2, p. 638–39). An "affidavit of non-prosecution, if admitted for the sole purpose of impeachment by a prior inconsistent statement, [does] not fall within the definition of hearsay." *Logan v. State*, 71 S.W.3d 865, 869 (Tex. App.—Fort Worth 2002, pet. ref'd). However, "[i]t is axiomatic that when impeaching a witness through the use of a prior inconsistent statement the examining attorney must follow a certain procedure to lay the predicate for introduction of the statement into evidence." *McGary v. State*, 750 S.W.2d 782, 786 (Tex. Crim. App. 1988) (detailing the proper predicate to be laid for cross-examination using an inconsistent statement). In order to lay the predicate, "a party must first tell the witness: (A) the contents of the statement; (B) the time and place of the statement; and (C) the person to whom the witness made the statement."

TEX. R. EVID. 613(a)(1). Moreover, extrinsic evidence of the witness's prior inconsistent statement, such as the written prior statement itself, is not admissible "unless the witness is first examined about the statement and fails to unequivocally admit making the statement." *Id.* R. 613(a)(4).

B. *Analysis*

*(i) The predicate for impeachment under TEX. R. EVID. 613 was not laid.*

Appellant's trial counsel began his cross-examination of Day by simply handing her the affidavit of non-prosecution, naming it as such, and asking whether she recalled signing it. Appellant's trial counsel proceeded to elicit Day's confirmation that the signature on the document was hers and that she "kind of" remembered signing it. Appellant's trial counsel then had Day silently read the affidavit. After Day silently read it, Appellant's trial counsel asked her whether she said that she and Appellant "were both arguing that day" and said that she was neither injured nor in pain. Appellant's trial counsel provided no predicate regarding when, where, the circumstances, or to whom the statements were made. The State asserted a hearsay objection, and the trial court sustained it. Appellant's trial counsel then attempted to have Day simply read a paragraph aloud, eliciting another hearsay objection sustained by the trial court. Appellant's trial counsel then asked Day if "in the past," without specifying when or where, she ever told anyone at his office that she was not in pain on the day of the incident. Day equivocally denied this, responding "I don't remember saying anything." However, the necessary predicate had still not been sufficiently established because Appellant's trial counsel had yet to orient the witness as to the circumstance of the statement by specifying *when* and *where* the statement was made. Without more, Appellant's trial counsel made no further inquiry into the statements within Day's affidavit of non-prosecution.

7

Appellant argues that the trial court reversibly erred in sustaining the State's hearsay objections because Appellant's trial counsel was only attempting to introduce Day's prior inconsistent statements for purposes of impeachment. Appellant argues that this was a violation of his right to effectively cross-examine Day under the Confrontation Clause, relying on *Van Arsdall*. However, *Van Arsdall* holds that the Confrontation Clause guarantees only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." 475 U.S. at 679. In this case, neither Appellant nor his trial counsel were deprived of the *opportunity* to impeach Day with prior inconsistent statements from her affidavit of non-prosecution. Appellant's trial counsel was simply required to comply with the Texas Rules of Evidence in the process of doing so.

Appellant also directs our attention to *Baldree v. State*, which held that the trial court improperly limited a defendant's impeachment of a witness with a prior inconsistent statement, in violation of the Confrontation Clause. 248 S.W.3d 224, 232 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). However, *Baldree* was precisely decided on the ground that the "defense counsel laid the proper predicate" for impeachment by a prior inconsistent statement. *Id.* at 232. Appellant, on the other hand, failed to lay the necessary predicate to impeach Day. *See* TEX. R. EVID. 613(a)(1); *Logan*, 71 S.W.3d at 869–70 (no abuse of discretion in excluding affidavit of non-prosecution for impeachment purposes without proper predicate). Therefore, Appellant was not deprived of the opportunity to effectively cross-examine Day with her affidavit of non-prosecution. He was merely barred from going about it "in whatever way, and to whatever extent," that he might have preferred. *Van Arsdall*, 475 U.S. at 679. For this reason, we conclude that the trial court did not abuse its discretion in sustaining the State's hearsay objections.

We further note that if the trial court had erred when it excluded this evidence, such error was harmless beyond a reasonable doubt. To address harm, we must decide whether the result may have been different if "the damaging potential of the cross-examination [had been] fully realized." *Van Arsdall*, 475 U.S. at 684; *Davis v. State*, 203 S.W.3d 845, 850 (Tex. Crim. App. 2006); *see also Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010). We decide this question in light of "a host of factors," including (1) the importance of the witness's testimony, (2) whether the testimony was cumulative, (3) the presence or absence of evidence corroborating or contradicting the witness's testimony on material points, (4) the extent of cross-examination otherwise permitted, and (5) the overall strength of the prosecution's case. *Van Arsdall*, 475 U.S. at 684; *Davis*, 203 S.W.3d at 850.

In this case, Appellant was convicted of aggravated assault with a deadly weapon by knowingly threatening Day with imminent bodily injury with a knife. Thus, the State was only required to prove, beyond a reasonable doubt, that Appellant (1) intentionally or knowingly (2) threatened Day with imminent bodily injury (3) while using or exhibiting a deadly weapon. PENAL §§ 22.01(a)(2), 22.02(a)(2). The State presented video footage of Day's conversation at the scene with the two responding officers, as well as trial testimony by Day and both officers, all of which showed that Appellant had waved a knife in Day's face during an argument.

If Appellant had been able to impeach Day with her affidavit of non-prosecution, the jury would have learned that Day previously denied that Appellant's conduct had caused her to suffer any injury or pain. For the convicted offense of aggravated assault with a deadly weapon, Appellant was indicted for *threatening* imminent bodily injury using and exhibiting a deadly weapon. One may be convicted of aggravated assault by the mere threat of bodily injury and pain using a

deadly weapon without actually inflicting that injury. *See* PENAL §§ 22.01(a)(2), 22.02(a)(2). Accordingly, as to his conviction, the actual infliction of injury and pain are collateral issues. Further, trial counsel for Appellant never offered the physical affidavit into evidence so this court cannot assume what the legal theories or arguments of counsel would have been nor how the court would have ruled had it been offered.

The jury watched body camera footage in which Day made statements at the scene arguably inconsistent with what she testified to at trial. The jury was aware that Day may have been unreliable, independent of her affidavit of non-prosecution. It is the *manner* of cross-examination of Day with regard to the affidavit that drew objections by the State, but when Appellant's trial counsel rephrased and asked the question regarding her past denial of pain—in terms of whether she had ever told others that she was not in pain on the day of the incident—there was no objection, and the witness was allowed to answer. Day did not directly admit or deny making a prior oral statement regarding the denial of pain; rather, she merely stated that she did not "remember saying anything." By continued cross-examination, Appellant demonstrated that Day was unable to remember at trial *other* statements that she made to the officers recorded on the video. In fact, throughout the short cross-examination of Day by trial counsel for Appellant, her inability to remember was highlighted. In any event, the jury was entitled to consider not only the testimonial error that might come with her advanced age, but also the pressure from her daughter to drop the charges, the abuse to Day by Appellant, and the resulting fears that might motivate an elderly woman's vacillating testimony. We conclude that in light of "the host of factors" set out in *Davis*, the result would not have been different if "the damaging potential of the cross-examination [had been] fully realized," by properly laying the predicate and using the affidavit of Day. *Davis*, 203 S.W.3d at 850.

10

Accordingly, we hold that, even if the trial court erred in sustaining the State's hearsay objections to Appellant's use of Day's affidavit, the error was harmless.

### *(ii) Appellant failed to preserve any error for appeal under TEX. R. EVID. 105.*

At no point did Appellant's trial counsel express that he was offering Day's prior statements for the limited purpose of impeachment. Nor did Appellant's trial counsel lay the necessary predicate for impeachment with a prior inconsistent statement under Rule 613 of the Texas Rules of Evidence. As such, the trial court could not have known that Appellant's trial counsel only sought to introduce statements from Day's affidavit of non-prosecution for the limited purpose of impeachment; therefore, the trial court correctly sustained the State's hearsay objections. Since the statements in Day's affidavit were only admissible for the limited purpose of impeachment and not as substantive evidence, Appellant was required by Rule 105(b)(2) of the Texas Rules of Evidence to "'expressly offer[] the evidence for its limited, admissible purpose' . . . [in order to] complain of the affidavit's exclusion on appeal." *Logan*, 71 S.W.3d at 870 (first alteration in original) (quoting former version of Rule 105(b)); *see also Dow v. State*, No. 03-02-00515-CR, 2003 WL 1922435, at *5 (Tex. App.—Austin 2003, pet. ref'd) (mem. op., not designated for publication) (holding that defendant waived any error by not specifically offering evidence for its limited admissible purpose); *Turner v. State*, No. 01-94-00089-CR, 1994 WL 543327, at *3 (Tex. App.—Houston [1st Dist.] 1994, no pet.) (not designated for publication) (holding that defendant never specified that evidence was only being offered for impeachment, barring any complaint on appeal); *Wright v. State*, 776 S.W.2d 763, 765 (Tex. App.—Corpus Christi–Edinburg 1989, pet. ref'd) (holding that error was waived by failure to specify that evidence was being offered for limited purpose of impeachment). Here,

Appellant's trial counsel never specified any limitation to the purpose for which he sought to introduce statements from Day's affidavit of non-prosecution. Appellant, therefore, failed to preserve the issue for appellate review.

For the above reasons, we overrule Appellant's sole issue on appeal.

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS
JUSTICE


November 12, 2021

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.